# MERRIMACK,

## JULY TERM, A. D. 1847.

## BOARDMAN *v.* NEW-HAMPSHIRE MUTUAL FIRE-INS. CO.

The party assured is bound by the representations upon which the policy has been issued, in those cases only in which the facts represented are material, unless they are expressly warranted to be true, and so become necessary conditions in the contract.

And this is the case whether the representations are contained in a writing referred to in the policy, and in terms made a part of it, or made otherwise than in such writing.

Whether a misrepresentation be material to the risk or not, is a question for the jury.

ASSUMPSIT, upon a policy of insurance of a certain brick store of the plaintiff, destroyed by fire on the 21st day of September, 1844.

On the 21st day of August, 1837, the plaintiff made his application, in writing, to the defendants, for an insurance upon the building named, and which was described in that application as follows: "The brick store, corner of Jaffrey and Court street, 38 by 40 feet, three stories high, two chimneys, six fire-places and stoves, with two open sheds in back, occupied by tenants, including a cabinet-maker tenant, in third story; about 50 feet south of shop of J. Judkins, cabinet-maker. Court street and Jaffrey street of good widths. No incumbrance."

Upon that application the defendants issued a policy to the plaintiff, who afterwards, and near the time of its expiration, on the 12th day of September, 1843, made application for further insurance upon the same premises, describing them as follows: "Store built of brick." "For particulars relative to the description of the brick store, reference is had to my application for policy No. 12,018," which was the policy first issued.

At the time when the first application was made the premises insured were occupied as follows, to wit: Third story by a cabinet-maker; second story, southerly half as a school-room, and northerly half for the storage of furniture; first story, southerly half as a grocery store, and northerly half vacant.

At the time of the second application, which was that on which the policy was founded which is the subject of the suit, and at the time of the fire by which they were consumed, the premises were occupied as follows: Third story, vacant; second story, southerly half by the artillery company, as an armory, and northerly half as a joiner's shop; first story, southerly half, as a store for the storage of groceries, and northerly half as a joiner's shop, with a machine moved by horse power for sawing, grooving and jointing lumber.

By the terms of the policy, the application is referred to and made a part of the policy.

Boardman *v.* New-Hampshire Mutual Fire-Ins. Co.

The by-laws of the company contained, among others, the following provisions :

"ART. 7. The company will make insurance for the term of six years. The rate of insurance will be in proportion to the exposure and hazard of the property insured to damage or loss by fire, and the premium note, or sum to be deposited by the applicant for insurance, shall be according to said rate, and the amount insured. Stores may be rated from six to fifteen per cent. ; taverns and public boarding-houses, from eight to eighteen per cent.; mills, blacksmiths', carpenters' and cabinet-makers' shops, if taken, from ten to twenty per cent. ; goods, stock in trade, household furniture, and other personal property, shall be rated according to their exposure and liability to damage or destruction by reason of fire ; but no risks which should be rated at more than twenty per cent. shall be taken by the company.

"ART. 10. The applicant for insurance shall be required to make a true representation of the situation of the property on which he asks insurance, and of his title," &c., &c.

At the trial, the defendants interposed the objection that neither the first application of the plaintiff, nor the second, referring to it, gave such a description of the risks to which the property insured was exposed, as by law and the by-laws of the company he was required to do in such application for insurance, in order to render the policy issued thereon binding upon them.

They further objected that the change of the manner of the occupation of the building, between the time of the first and the time of the second application, and of the fire, and the increased risk occasioned by such change, not having been disclosed by the plaintiff, he is not entitled to recover.

The defendants had no knowledge, before the loss, except from the representations contained in the plaintiff's

written applications, as to the manner in which the building was occupied.

The verdict was taken for the plaintiff, by consent of parties, who also agree to the statement of the case, and to the additional fact that, by the change that was made in the use and occupancy of the building, as stated, the hazard was increased.

Judgment is to be rendered upon the verdict, or the same is to be set aside, as the court may direct.

*Pierce & Minot,* for the defendants.

*Perley,* for the plaintiff.

GILCHRIST, J. The plaintiff's application, of the date of the 21st of August, 1837, after stating the size, position, and some other particulars descriptive of the store insured, states that it is " occupied by tenants, including a cabinet-maker tenant in the third story."

In the second application, being the one on which the policy in controversy is based, and dated on the 13th day of September,1843, there is no other description than that which is contained in the words referring to the former application, which are as follows : "For particulars relative to the description of the brick store, reference is made to my application in policy No. 12,018."

We may, therefore, consider that when the plaintiff applied, on the 13th of September, 1843, for insurance, he represented the store as " occupied by tenants, including a cabinet-maker tenant in the third story ;" and that the policy was issued upon that representation.

In point of fact, this was not a true representation, because, at the time, the third story was vacant. There was a joiner's shop in the first story, and a similar one in the second, and the remainder of the building was occupied by other tenants.

This representation is, by the terms of the policy, made a part of it, and must, of course, be read as if incorporated in it.

Is the misrepresentation contained in the application such as to avoid the policy ? Is it to be taken as a condition, essential and necessary for the validity of the policy, that the building should have been occupied, at the time of the application on which the policy was issued, or at the time when the fire occurred, in the manner in which it was stated in the application to have been occupied ?

Parties to insurance, like parties to other contracts, may, without doubt, incorporate into their contract such conditions, whether apparently material or immaterial, as they see fit. If the assured has, in express terms, stipulated and warranted that a certain fact is true, that warranty makes the fact a material one; and however immaterial it may seem in any other aspect, an indispensable condition in the compact. This principle is fully illustrated by the cases. "Such express warranty is always a part of the policy, but, like any other part of the express contract, may be written in the margin, or contained in proposals or documents expressly referred to in the policy, and so made a part of it." 1 Phil. Ins. 347, and cases there cited; *Newcastle F. Ins. Co.* v. *Macmorran,* 3 Dow. P. C. 255, per Ld. *Eldon.*

But while this unquestionable effect is given to express warranties or conditions, when ascertained, it is a well established doctrine of the law of insurance that not every representation made by the assured, in his application or treaty for a policy, is of that nature. In order to have such an effect the representation must be material; or, in the language of the author of the treatise last cited, the fact represented must be " one upon which the parties can be presumed to have proceeded in making the contract." Phil. Ins. 410. " A false representation cannot avoid the policy, unless it be on a point material to the risk."

Boardman *v.* New-Hampshire Mutual Fire-Ins. Co.

*Coulon* v. *Bowne*, 1 Caines 291, S. P. *Currie* v. *Com'th Ins. Co.*, 10 Pick. 540.

Nor does it appear to be material whether the representations, if not expressly made conditions in the contract, are in writing and by words of reference in the policy made a part of the instrument itself, or contained in letters or documents not so expressly referred to. *Snyder* v. *Farmers' Ins. Co.*, 13 Wend. 92; S. C., in error, 16 Wend. 481. Nor, indeed, do representations contained in the body of the policy itself amount, in all cases, to express warranties, to be literally kept as conditions. An instance of this occurs in the case of *Shaw* v. *Roberts*, 6 Ad. & Ellis 75, which was a policy of insurance upon a "kiln for drying corn, in use." It appeared on the trial that the kiln was used by the plaintiff for drying corn, but that upon a certain occasion he gratuitously suffered another to dry bark in it, and that the building was in consequence destroyed by fire. The court of K. B. held that such description was no warranty that nothing but corn should be dried in the kiln. Lord *Denman* said : "No clause in this policy amounts to an express warranty that nothing but corn should ever be ground in the kiln, and there are no facts or rules of legal construction from which an implied warranty can be raised."

So in *Dobson* v. *Sotheby*, 1 Mood. & Mal. 90, where a building was described as a "barn," which was in fact of another description. *Catlin* v. *Springfield Ins. Co.*, 1 Sum. 434, is a case to the same point.

There is nothing, therefore, in the form in which the description of the building and of its uses is introduced into the transaction between these parties, that shuts out the inquiry whether it was intended and understood by them to be in the nature of an express warranty, or only in the nature of a representation. We must, therefore, look at the whole contract, its terms and its objects, and thus ascertain the meaning of the parties in the particulars referred to.

It can hardly be supposed that it was their intention the plaintiff should be bound by his description to such an extent that its accuracy, in every particular, should form a condition in the contract. If so, its benefits would be forfeited if the third story, which was occupied as a cabinet-maker's shop, which was of a hazardous description, was in fact vacant, although that state of things was clearly for the advantage of the underwriting party. The case of *Catlin* v. *Springfield Ins. Co.*, 1 Sum. 434, was, in that particular, like the present; and it was held that where the premises were described as " at present occupied as a dwelling-house, but to be occupied hereafter as a tavern," it was a mere representation, and not a warranty ; and that the risk continued, though the premises were vacant.

We conclude, therefore, that the words in which the application describes the premises as "occupied by tenants, including a cabinet-maker tenant in the third story," were merely representation, and not express warranty ; and that the plaintiff is bound by them no further than they were material. They were material if they were such as may be supposed to have had a bearing upon the contract, and to have influenced the defendants in adjusting its terms ; and a misrepresentation of any fact that is not material, does not, as has been said, avoid the contract.

Whether the misrepresentation was or was not material is a question for the jury. The authorities on this point are numerous. *Finn* v. *Hadlam*, 9 B. & C. 693 ; *Hall* v. *Cooper*, 14 E. 479 ; *Mackay* v. *Rhinelander*, 1 Johns. Cas. 408 ; *Williams* v. *Delafield*, 2 Caines 329 ; *Farmers' Ins. Co.* v. *Snyder*, 16 Wendell 481 ; *Currie* v. *Com'th Ins. Co.*, 10 Pick. 540.

The case finds that between the time of the first application and the fire a change had intervened in the occupation or use of the building, that increased the risk, and

that the plaintiff did not advertise the company of that change. But that, too, was matter for the jury, who might well have found, notwithstanding, that there was no such increase of risk as would have been regarded by the parties, or have caused a higher rate of premium to have been exacted, according to the rules of the company.

As against the verdict, which involves the consideration of all the questions by the jury, it is not the province of this court to say that either the misrepresentation or the omission was material.

There must, therefore, be

*Judgment on the verdict.*