## MUTUAL LIFE INS. CO. OF NEW YORK v. HURNI PACKING CO.

(Circuit Court of Appeals, Eighth Circuit.   April 4, 1922.)

No. 5790.

1. **Insurance ☞400—Death within time specified in incontestable clause does not fix right to contest.**

Under a provision of a life policy that it shall be incontestable, except for nonpayment of premiums after two years from its date of issue, insured's death within the two years does not fix the right to contest the policy.

2. **Insurance ☞400—Right to contest within two years may be waived.**

Under a provision of a life policy that it shall be incontestable after two years from its date of issue, the right reserved to contest it within two years may be waived.

3. **Insurance ☞400—Affirmative action necessary under incontestable clause.**

Under a provision of a life policy that it shall be incontestable after two years from its date of issue, affirmative action is necessary to consummation of the inchoate right to contest within the two years.

4. **Insurance ☞400—Letter refusing to pay held sufficient contest within incontestable clause.**

Under a provision of a life policy that it should be incontestable after two years from its date of issue, a letter written by the insurer to the beneficiary's attorney declining to pay on the ground of misrepresentation was a sufficient act of contest.

5. **Insurance ☞400—Provisions as to delivery while in good health, etc., did not make date of delivery "date of issue," within incontestable clause.**

Provisions of a life policy that it should not take effect until the first premium should be paid, and the policy should be delivered during insured's continuance in good health, did not make the date of delivery the "date of issue" within a provision making the policy incontestable after two years from the date of issue.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Date.]

6. **Insurance ☞400—Date of antedated policy held "date of issue" within incontestable clause.**

Where a life policy provided that the applicant might have the policy antedated for a period not exceeding six months and it was dated August 23, though not executed until September 7, and not delivered until September 13, August 23 was the conventional date of execution, and hence of issue, within the provision making the policy incontestable after two years from the "date of issue."

7. **Insurance ☞175—Date agreed on must be taken as date of policy for all purposes.**

Where a policy provides that it may be antedated for a period not exceeding six months on the applicant's request, without any restriction of the effect of such date, the date agreed on must be taken as the date of the policy for all purposes thereby affected.

Sanborn, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Northern District of Iowa; Henry T. Reed, Judge.

Action by the Hurni Packing Company against the Mutual Life Insurance Company of New York. Judgment for plaintiff, and defendant brings error. Affirmed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

G. T. Struble, of Sioux City, Iowa, and Ralph L. Read, of Des Moines, Iowa (Sargent, Gamble & Read, of Des Moines, Iowa, and Jepson, Struble & Anderson, of Sioux City, Iowa, on the brief, and Frederick L. Allen, of New York City, of counsel), for plaintiff in error.

Edwin J. Stason, of Sioux City, Iowa (Charles M. Stilwill, of Sioux City, Iowa, on the brief), for defendant in error.

Before SANBORN and LEWIS, Circuit Judges, and VAN VAL-KENBURGH, District Judge.

VAN VALKENBURGH, District Judge. This case comes before this court for the second time. 260 Fed. 641, 171 C. C. A. 405. On the first appeal the judgment of the trial court, which was in favor of defendant in error herein, was reversed, and the case was remanded for a new trial, for the reason that the statement made by the insured, in his application for life insurance, that he had not consulted nor been treated by a physician during the previous five years, when in fact he had been treated or prescribed for each year for supposedly temporary ailments, was held to be a material misrepresentation, which under the terms of his contract, invalidated the policy. In the opinion of the appellate court the trial court should have directed a verdict for the defendant.

In the court below, after the case had been redocketed, and after a second trial, the plaintiff, by leave of court, amended its reply as follows:

"The plaintiff states that the defendant failed to contest the policy of life insurance payable to the plaintiff, by the tender of the return of the premiums paid or otherwise within the two year period in which the policy might be contested as provided by the terms thereof, and it is now barred from setting up or urging any of the defenses set forth in its answer."

At the close of the evidence below, both parties submitted motions for a directed verdict; that of defendant in error was sustained, a verdict was directed accordingly, and judgment for defendant in error resulted.

It is already the law of the case, as held by this court on the former appeal, that the false statement complained of was made, and constitutes a sufficient defense to the collection of this insurance, in the absence of countervailing circumstances. The contention now presented is that the insurance company, under the terms of its policy, has interposed that defense too late for legal effectiveness. This is the only question in the case.

The policy, by the construction of which, coupled with the steps taken by the defendant company to avail himself of its provisions, this case must be decided, was in fact executed in the city of New York by the signatures of the president and secretary on the 7th day of September, 1915. It was then sent by mail to the office of the defendant company in Des Moines, Iowa, for delivery under the terms and conditions of the policy. Said policy was received by defendant's agent on or about September 12, 1915, and was delivered by him to the

insured on or about the 13th day of September, 1915. The policy upon its face contains the permission that "the applicant, upon request, may have policy antedated for a period not to exceed six months." In con-nection therewith no other qualification, limitation or explanatory mat-ter appears. Interlined between the heading and the body of the appli-cation appear these words: "Date policy, August 23, 1915; age 47." This is taken to evidence the request of the applicant referred to, and in accordance therewith the insurance policy contains the following testi-monium:

"In witness whereof, the company has caused this policy to be executed this 23d day of August, 1915. W. J. Eastman, Secretary. Charles A. Peabody, President."

It clearly appears, therefore, that the date of execution and of the policy, by contract and agreement, was fixed as the 23d day of August, 1915. It was further provided that the annual premium should be paid upon each 23d day of August thereafter until the death of the insured. In the body of the policy this clause occurs:

"Incontestability: This policy shall be incontestable except for nonpayment of premiums, provided two years shall have elapsed from its date of issue."

The insured died on the 4th day of July, 1917, less than two years from the time the policy was issued under any theory of the case. Proofs of death were duly submitted. Replying to the claim thereby made, on the 24th day of August the attorney for the insurance com-pany, conceded by stipulation to have been clothed with full authority to act in that behalf, wrote to the attorney for the beneficiary, conceded to have like authority, that the company declined to pay the policy upon the ground of the misrepresentation hereinabove referred to. This was the first action of any nature taken by the company to avail itself of the defense reserved in the two-year clause above quoted.

[1-4] It is contended by the insurance company that the policy must have been in effect two years during the life of the insured; otherwise, the right of the insurance company to contest became fixed by death within the period of limitation. We cannot agree with this view. The reservation for the benefit of the company was one that might be waiv-ed. Affirmative action was necessary to the consummation of the in-choate right created by the terms of the policy. We are equally of opinion that a repudiation of the claim of defendant in error, such as that made in the letter of August 24th, was a sufficient act of contest, and that court proceedings were not essential to the assertion of the right, as counsel for defendant in error contend.

[5, 6] This being true, there remains only to consider whether the defendant company acted in time. We do not think it did. It is con-ceded that its letter of repudiation was not written nor mailed until the date it bears, which is August 24th, one full day beyond the two-year period, as evidenced by the date of the policy; but plaintiff in error in-sists that the date of application, the actual date of execution, the date of delivery, and a provision in the application that the proposed policy shall not take effect "unless and until the first premium shall have been paid during my continuance in good health, and unless also the policy

shall have been delivered to and received by me during my continuance in good health," extend the two-year period of contestability at least to the 7th day of September, if not to the 13th day of September, and that, therefore, its said affirmative act of contest was in good time.

The clause last quoted cannot aid the insurer. Its objective was the good health of the insured at the time of paying the first premium and the delivery of the policy. Conceding that the first premium may not have been paid until the policy was delivered, there is nothing in the record to indicate that the insured was not in good health within the meaning of the instrument on that date. He was found by the examiner for the insurance company to be in good health on the date the examination in connection with the application was made, and there is no intimation that his physical condition had changed in the meantime; but, more than this, the period of contestability was not made to depend upon the payment of the premium nor the delivery of the policy. The language is "two years from its date of issue"; and by agreement the conventional date of execution, and hence of issue, was the 23d day of August, 1915. In the absence of any qualifying language, the date of a policy is always taken to mean the date of its issue; and the language of an insurance policy, when uncertain and ambiguous, has always been construed in favor of the insured and more strongly against the insurance company. So the courts have uniformly held. Mass. Benefit Life Ins. Co. v. Robinson, 104 Ga. 256, 30 S. E. 918, 42 L. R. A. 261–269; 14 Ruling Case Law, 1201–1233; Anderson v. Mutual Life Ins. Co., 164 Cal. 712, 130 Pac. 726, Ann. Cas. 1914B, 903; Harrington v. Mutual Life Ins. Co., 21 N. D. 447, 131 N. W. 246, 34 L. R. A. (N. S.) 373; Wood v American Yeomen, 148 Iowa, 402–404, 126 N. W. 949; Monahan v. Fidelity Mut. Life Ins. Co., 242 Ill. 488, 90 N. E. 213, 134 Am St. Rep. 337.

[7] It was stated in argument, based upon the testimony of the witness Spencer for the company, that this concession that the policy might be antedated had reference only to the payment of premiums and to the privileges attaching to age. While this may have been the chief object in the mind of the company, nothing appears which restricts the effect of the date of the policy to these special objects. We must take the date agreed upon as the date of the policy for all purposes affected thereby.

It is a matter of common knowledge that no policy bears a date identical with that of its delivery, or of conditions and happenings governing the time when it becomes effective. These incidents are rarely regarded as conditioning the date of the issue or execution, as evidenced by the date appearing upon the face of the policy. If it had been the purpose of the insurer to depart from the customary rule of construction and interpretation in this respect, it could, and would, have adopted language expressive of that purpose. Instead of "date of issue," it would naturally have provided that the two years should elapse "from date of delivery," or "from the date the policy becomes effective," or from the "time," instead of "date," of issue. It may be further noted that the language used is *its* date of issue, thereby **referring** more obviously to the date borne by the policy itself.

We do not feel at liberty to read into this contract terms which it does not contain, nor to vary the natural and customary meaning of the terms employed. In the absence of any qualifying and binding language to the contrary, it may be conceded that an insurance policy would not be conceived to exist prior to the date of the application upon which, in part, it is based; but it was entirely within the contracting power of the parties to stipulate that the issuance of the policy, for all purposes contingent upon such issue, should antedate the actual physical fact, and this, in our opinion, is what they did.

For the reasons above stated, the judgment should be affirmed; and it is so ordered.

SANBORN, Circuit Judge (dissenting). The real question in this case is whether the parties to the insurance policy in controversy agreed thereby that it should be contestable for 2 years from the date of the policy, or for 2 years from the date of the issue of the policy. The clause of contestability, which contains the answer to this question, reads:

"This policy shall be incontestable, except for nonpayment of premiums, provided two years shall have elapsed from its date of issue."

It cannot be successfully denied that this clause in itself expresses an unambiguous agreement that the policy shall be contestable by the company for 2 years from its date of issue. The date of a policy is not generally the date of its issue. Normally and usually the date of a policy is the date of the signature thereto of the officers of the corporation, and that date is almost universally, as it was in this case, a different date from the date of the issue of the policy.

Issue means "To deliver for use." A policy is not issued when it is dated and signed by the officers of the company, nor until it has been delivered to and accepted by the insured. The application for it is a request for a policy; the policy is a proposal of the company to insure on the terms specified therein; the receipt and acceptance of such a policy by the insured first closes the contract. Until that acceptance there may be negotiations, but no contract. Upon such receipt and acceptance on September 13, 1915, and not before, was there a contract in this case, and then, and not until then, was this policy issued. Then was it first "delivered for use," 4 Words and Phrases, First Series, p. 3780; Jefferson Standard Life Ins. Co. v. Wilson, 260 Fed. 593, 171 C. C. A. 357; Logsdon v. Supreme Lodge of Fraternal Union of America, 34 Wash. 666, 76 Pac. 292, 293; Paine v. Pacific Mutual Life Ins. Co., 51 Fed. 689, 693, 2 C. C. A. 459; Equitable Life Assurance Co. v. McElroy, 83 Fed. 631, 642, 28 C. C. A. 365. The date of this policy, therefore, differed from the date of its issue. The former was August 23, 1915, and the latter was September 13, 1915.

Not only this, but the parties to this policy expressly agreed, when this policy was issued, that the date of the policy and its date of issue should be at different times. They agreed that the policy should not take effect, and that was an agreement that its date of issue should not be, until it was delivered to and received by the insured during his con-

tinuance in good health, and that was not until the 13th day of September, 1915.

Nor was this all of their clear agreement upon this subject. They further expressly agreed that the date of the policy should be a date different from and earlier than the date of its issue. They agreed that "the applicant, upon request, may have policy antedated for a period not to exceed 6 months." Pursuant to that provision the applicant requested, and the insurance company granted, its request to antedate the policy to August 23, 1915. Here was an agreement that the date of the policy should be anterior to—that it should be before—some date. What date was the date of the policy to be before? The unavoidable answer is that it was to be before, to be anterior to "its date of issue." So it is that the incontestability clause without ambiguity provides that the policy shall be contestable, not for 2 years from its date, but for 2 years from "its date of issue." Its date was August 23, 1915. Its date of issue was September 13, 1915. The clear purpose and intention of the parties to this policy by the use of this incontestability clause was to give to the company 2 full years from the closing of the contract to contest the policy. It could not contest it before the policy contract was closed, before there was a contract. By the clear terms of the policy this term of contestability extends 2 years from the date the policy contract came into existence—2 years "from its date of issue."

If that clause be interpreted and enforced as it reads in the policy, the antedating clause is perfectly consistent with it, leaves the contestability clause unmodified, and the company's 2 years of contestability intact. But if, by construction, a substitution in the incontestability clause of the term "from the date of the policy" for the term "from its date of issue" be made, then the antedating clause which permits the insured to have the policy dated back not more than 6 months anterior to the date of its issue, gives to the insured the option to reduce the company's period of contestability not exceeding 6 months, to make it 18 months, instead of two years, and the antedating clause thus conflicts with the incontestability clause as the latter is written in the policy, modifies the latter, and cuts down the 2 years of contestability 6 months at the option of the insured. In this state of the case, since the clauses as they read are rational, effective, and consistent, a modification of the incontestability clause by the substitution of "from the date of the policy" for "from its date of issue," does not seem to be required or permissible, nor am I able to believe that the parties to this contract ever intended to make the contract which such a modification would create.

General rules of construction are that all the words and terms of a contract should have effect, if possible, and none should perish by construction, and that where a contract is susceptible of two constructions—one of which makes the different parts of it accordant and another which makes them discordant—the former should be preferred, because it cannot be assumed that the parties intended to insert inconsistent provisions. Burdon Central Sugar Refining Co. v. Payne, 167 U. S. 127, 142, 17 Sup. Ct. 754, 42 L. Ed. 105; Miller et al. v.

Hannibal & St. Joe R. Co., 90 N. Y. 430, 433, 43 Am. Rep. 179; Barhydt v. Ellis, 45 N. Y. 107, 110. If the contestability clause and the antedating clause be enforced as the parties wrote them, without the change of the former "from its date of issue" to "from the date of the policy," that clause and the antedating clause are consistent. Every word of each of the clauses has its normal effect, without impairing or modifying any of the terms of the other, and none of the words or terms of either perish by construction. If, by construction, the term "from its date of issue" be changed to "from the date of the policy," the two clauses conflict, the two years of contestability the parties undoubtedly intended to secure to the company are reduced to 23 months and 10 days, and some of the clear terms of the contestability clause perish by construction.

Again, when the parties to this policy came to make this contract they had the perfect right to agree that the 2 years of contestability should run from the date of the policy or from "its date of issue." The two dates were not the same, they knew these facts, the insurance company had adopted a policy which permitted the insured to have that policy dated not exceeding 6 months earlier than "its date of issue," and had expressly agreed that the company should have the right to contest its policy for fraud for 2 years after "its date of issue." The permission to date back the policy, by the clear terms of the contract as it then read, did not and could not modify or impair the right of the company to the full 2 years of contestability from the date of the issue of the policy, from the time when the contract was first made. The insured accepted the policy contract so reading, and in my opinion the parties to that contract are legally bound by, and should be held to, its terms.

For the reasons which have now been stated, the contract and the facts of this case have failed to satisfy my mind that this court should substitute by construction, for the words "from its date of issue" in this policy, the words "from the date of the policy," reduce the 2 years of contestability from the date of the making of the contract which the policy seems to me to have been intended to secure, and which. it seems to me, it did secure to the company to 23 months and 10 days, and thereby deprive the company of the defense of fraud in the procurement of this policy, which it has if its period of contestability under the policy was 2 years from "its date of issue," which was the date the contract was made.