Hillsborough, }
May 5, 1936. }

AMOSKEAG TRUST COMPANY, *Trustee.*

*v.*

PRUDENTIAL INSURANCE COMPANY OF AMERICA.

*Warren, Wilson, McLaughlin & Bingham (Mr. J. Walker Wiggin orally)*, for the plaintiff.

*Thorp & Branch (Mr. Branch orally)*, for the defendant.

PAGE, J.   The defendant's motions for nonsuit and directed verdict were based upon the theory that it conclusively appeared both that the policies were obtained by fraud and that the insured committed suicide.   The ground of suicide having been waived with respect to the exceptions to the denial of the motions, the only question raised by those motions is whether fraud conclusively appears. That leaves no question of law regarding suicide except one respecting instructions.

The discussion may center upon the denial of the motion for nonsuit.   But before that is considered, it will be convenient to determine the claim of the plaintiff, raised by its exception to the denial of its motion for a directed verdict in its own favor, that the defendant is precluded by the incontestability clause of the policies from raising the defence of fraud.

I. Each policy contained the following provision: "This Policy shall be incontestible after two years from its date of issue, except for non-payment of premium."   If this provision is legally permissible and is to be construed strictly, the period within which the contest could be made expired on June 18, 1933.

Our statute provides (P. L., c. 277, *ss.* 8, 9) that every policy "issued or delivered within this state by any life insurance corporation doing business within the state" shall be incontestable after it shall have been in force *during the life time of the insured for two years from its date* except for certain defences other than fraud.   It seems, if the statute controls this case, that the death of Dr. Bragg on January 1, 1932, less than two years after the date of the policy, left the defendant free to contest the policies at any time it would be free to do so independently of the incontestability clause.

But that point need not be decided.   Let us assume that the incontestability clause is not to be interpreted by the statute (whether because the policy was not in fact issued or delivered in this state, or because the statute is to be construed as permitting the parties to

contract for a limitation of action more favorable to the insured and the beneficiary). On that assumption we are faced by the overwhelming weight of authority that the period of incontestability begins to run on the day the policy is dated, that the running is not suspended by the death of the insured, and that the parties must be in judicial contest before the period is run, otherwise the unexcepted defence is not available. *Northwestern &c. Ins. Co.* v. *Pickering*, 293 Fed. 496; *Jefferson &c. Insurance Co.* v. *McIntyre*, 294 Fed. 886; *Chun Ngit Ngan* v. *Insurance Co.*, 9 Fed. (2d) 340; *Rose* v. *Insurance Co.*, 19 Fed. (2d) 280 (though there was a pointed dissenting opinion); *Missouri &c. Ins. Co.* v. *Cranford*, 161 Ark. 602; *Prudential Ins. Co.* v. *Prescott*, 115 Fla. 365; *Powell* v. *Insurance Co.*, 313 Ill. 161; *New York Life Ins. Co.* v. *Adams*, 202 Ind. 493; *Priest* v. *Insurance Co.*, 119 Kan. 23; *Repala* v. *Insurance Co.*, 229 Mich. 463; *Killian* v. *Insurance Co.*, 251 N. Y. 44; *American &c. Co.* v. *Insurance Co.*, 173 N. C. 558; *Mutual Life Ins. Co.* v. *Buford*, 61 Okla. 158; *Humpston* v. *Insurance Co.*, 148 Tenn. 439; *American &c. Ins. Co.* v. *Welsh* (Texas) 3 S. W. Rep. (2d) 946; *United &c. Ins. Co.* v. *Massey*, 159 Va. 832.

The full application of the majority rule operates to exclude the defence of fraud when pleaded after the running of the period, even though the suit on the policy be entered before the time has elapsed. *Northwestern &c. Ins. Co.* v. *Pickering, supra; Missouri &c. Ins. Co.* v. *Cranford, supra* (two justices dissenting).

In the small minority group, perhaps, is the United States Circuit Court of Appeals for the Eighth Circuit. There it has been held that a notice of denial of liability is a contest (*Mutual Life Ins. Co.* v. *Company*, 280 Fed. 18), though more recently the court has suggested doubts (*Peake* v. *Insurance Co.*, 15 Fed. (2d) 303). In Minnesota it is held that the death of the insured within the period of incontestability fixes the rights of the parties, so that the insurer may set up the defence of fraud whenever suit is brought upon the policy. Consequently the insurer may not, subsequent to the death of the insured and prior to the termination of the period, bring a bill in equity for the cancellation of the policy. *Mutual Life Ins. Co.* v. *Stevens*, 157 Minn. 253. At the opposite pole, denying the jurisdiction of equity and permitting the beneficiary to delay suit until the period is run, in order to deprive the insurer of a defence, is *Prudential Ins. Co.* v. *Prescott, supra.*

Holding a somewhat middle position is *Feierman* v. *Insurance Co.*, 279 Pa. St. 507, where it is suggested that the defence of fraud is open

if the insurer, within the time prescribed after the date of the policy, by some act to cancel the policy or by notification to the insured or the beneficiary, indicates that it will no longer be bound. For collections of the cases reference may be had to 36 A. L. R. 1245 and 64 A. L. R. 959.

There is no occasion now to decide whether we should follow the majority view or take one more moderate. It may be said in passing, however, that the majority adopt the principle that in case of doubt the construction of the contract will prevail which is most favorable to the insured. That principle is not recognized here. *Raymond* v. *Company*, 86 N. H. 93, 97. So whenever the incontestability clause may have to be construed here, it will be necessary to give a reasonable interpretation unhampered by any special rule of construction, except, in a proper case, our own statute.

We may, however, for the present assume that the extreme, technical view is correct. If it were to be adopted, it would not be improper to apply and extend it with the same technicality that marks it throughout, leaving out of view only the notion that the insured is to be favored. If a contest exists when the insurer has pleaded fraud and that issue is before the court, the contest is made because the issue is triable, and not because of the fact that the defendant has filed a formal plea.

The plaintiff's writ was entered on September 20, 1932, and the defendant appeared the same day. Under rule 8 of the superior court, the entry of appearance by the defendant on September 20, 1932, without filing a plea, resulted ninety days later (December 21) in the action being triable upon the general issue. To all intents it was as if the defendant had so pleaded, nearly six months before the expiration of the strictest period of incontestability. If the case had been tried in January, 1932, upon the pleadings as they then stood, the defence of fraud would have been fully open to the defendant. *Hoitt* v. *Holcomb*, 23 N. H. 535.

The triable issue so remained continuously until the case was actually tried. The filing later of the brief statement of defence on the ground of fraud did not in the least alter the issue already before the court, and did not create a contest where none had existed. Even where the extreme rule is applied, it has been held that where the matter of defence is in issue, though by imperfect pleading, within the period of incontestability, there is a contest, and it is error to deny the defendant's motion to perfect its pleadings. *Sharlach* v. *Insurance Co.*, 9 Fed. (2d), 317; *Joseph* v. *Insurance Co.*, 308 Ill. 93.

The exceptions to the denial of the plaintiff's motions for directed verdicts are overruled.

II. While the failure of the insured to disclose all of the insurance in effect upon his life may have been fraudulent, it will not be necessary to consider it. Nor need the statement as to hospital treatment be discussed, except in connection with the remaining item of alleged fraud. The statements in the application blank and the declarations to the medical examiner were made a part of the contract of insurance by expressed stipulation signed by Dr. Bragg. Copies were attached to the policies, which provided that the policy and application together constituted the whole contract. This was in exact accord with the statute. P. L., c. 277, s. 8.

One of the questions put in the course of the medical examination was "Have you ever had albumin, blood or sugar in your urine? If yes, give particulars, including treatment." The answer was no, and was written in. Below the questions and answers was the following statement, signed by Dr. Bragg: "I hereby declare that all the statements and answers to the above questions are complete and true, and I agree that they shall form a part of the contract of insurance applied for." The answer as to albumin and blood was admittedly false. The plaintiff, however, argues that knowledge of the falsity of the statement on the part of Dr. Bragg was not conclusively shown, or, granting that he ever knew it, reasonable men might find that he had forgotten the fact and that he made the answer on June 10, 1931, in good faith.

The facts, appearing upon uncontradicted evidence, are that on October 5, 1929, Dr. Bragg was taken to a hospital after an automobile accident; that he was then completely unconscious and in an apparently dying condition; that he was placed under treatment and remained in the hospital for five days; that while there his urine was analyzed four times with the following recorded results: (1) large trace of albumin, numerous blood casts; (2) slight trace of albumin, many blood casts; (3) slight trace of albumin, few casts; (4) slight possible trace of albumin, occasional casts.

It further appeared without contradiction that the physician in charge told Dr. Bragg that albumin had been found in his urine, and that until December, 1929, or January, 1930, Dr. Bragg occasionally took samples of his urine to his physician for analysis. During that time no blood appeared, and the trace of albumin entirely disappeared. These facts were communicated to Dr. Bragg. It would be reasonable to find that there was no basis for apprehending a recurrence of

the albumin and blood, that there was a complete recovery in this respect, and that Dr. Bragg attached no importance to the former presence of the substances inquired about.

The plaintiff therefore argues that it might be found that Dr. Bragg forgot the facts once known, or, remembering them, innocently believed that the knowledge of the facts was of no importance to the defendant in determining whether or not it should write the risk applied for. He cannot reasonably be found to have forgotten. It is hard to conceive that a physician, inferentially familiar with such matters, should forget the occasions eighteen months previous when he had taken samples of his urine for analysis. The question was put squarely to him, not indirectly or by way of vague allusion. The questions and answers just previous were in part: "Have you ever had medical or surgical treatment in a hospital or sanitarium?" "Yes." "If yes, medical or surgical?" "Observation." "Give full history (dates, nature of illnesses, time disabled, and results)." "Hosp. 5 days for observation following auto accident—Oct. 5+ '29." Here were all the necessary jogs to memory, and all of the memory of occasion required to suggest the matter inquired about. No reasonable man could believe that Dr. Bragg, when he made application for this insurance, had forgotten that his urine ever showed albumin or blood.

But the plaintiff still argues that, though Dr. Bragg knew and remembered the facts, his misstatement was made innocently, in the belief, entertained in good faith, that he had completely recovered, that there was no reasonable prospect of a recurrence of the trouble, and that he was a good risk. We may suppose that he believed all those things in good faith; we may even suppose that they were all true. Nevertheless, it was not with respect to recovery, recurrence or risk that Dr. Bragg was called upon to answer or to exercise good faith.

He was clearly and pointedly asked, not whether he then had albumin in his urine, but whether he had ever had it. In case he had ever had it, he was asked to give particulars, including treatment. He was not asked for diagnosis or prognosis, but for historical facts. He was not asked whether he considered himself a good risk; that was a judgment reserved by the defendant according to every fair implication. Being a physician, Dr. Bragg did not need to be reminded of all this. If, upon supposition, he consciously believed that the facts falsified did not affect the risk, then it must be supposed also that by concealing those facts he assumed to act secretly the part

of the medical advisors of the company. The innocence and good faith of such action are not discernible.

Nobody could know better than a physician, that the question called for facts, not opinions. He certified that the answers were complete and true, not that he believed them to be true, and his professional knowledge excludes the possibility, sometimes open to a layman, of having the answer construed as a statement of opinion rather than one of fact. *Owen* v. *Insurance Co.*, 74 N. J. L. 770; *Smith* v. *Insurance Co.*, 83 N. J. L. 719. There was no ambiguity about the question which required the applicant to supply a definition or opinion of his own in the exercise of good faith, no opportunity for a physician to misunderstand and innocently misstate. *Penn Mut. Life Ins. Co.* v. *Company*, 72 Fed. 413, 432.

The attitude of mind that substitutes for a statement of pure fact an opinion, disguised as a statement of fact, can hardly be said to be one of good faith. Moreover, there was more called for than the fact regarding the presence at any time of albumin. If the applicant had ever had albumin in his urine, though it had disappeared finally and forever, he was to "give particulars, including treatment." He was asked to give the story completely, in order that the company might judge of the risk with full information. He in fact concealed every part of the story, and we are now asked to consider the theory that he did so in good faith, although he certified his answers to be "complete and true" and agreed that they should form a part of the contract. If in good faith Dr. Bragg believed he was a good risk in respect to this question, good faith demanded no less than the whole truth about the facts. No applicant so fully informed in such matters, in the absence of excusing circumstances here lacking, can be considered as acting innocently if he fails frankly to take the risk of rejection after disclosure of all the facts asked for.

The fraudulent intent conclusively appears upon the evidence. The policies provided that "all statements made by the Insured shall in the absence of fraud be deemed representations and not warranties." The seeming identification of fraud and warranty has suggested the question whether, if the statement be made with intent to defraud, it is to be treated as a warranty, the falsity of which will avoid the contract. *Metropolitan &c. Ins. Co.* v. *Olsen*, 81 N. H. 143, 148.

The general view at common law, independently of this provision, was that a breach of warranty in an application made a part of the contract of insurance constituted a defence, even though the war-

ranty related to an immaterial matter. A misrepresentation, however, contained in an application not a part of the contract, was a defence only if it related to a material matter. *Eastern &c. Works* v. *Insurance Co.*, 234 N. Y. 441; *Silcox* v. *Fraternity*, 79 N. J. L. 502. "If the assured has, in express terms, stipulated and warranted that a certain fact is true, that warranty makes the fact a material one; and however immaterial it may seem in any other aspect, an indispensable condition in the compact." *Boardman* v. *Insurance Co.*, 20 N. H. 551, 555. This case holds, however (at page 557), that where the statement is to be regarded as an ordinary representation, not a warranty, the question of materiality is for the jury. In order to have the effect of avoiding the contract, such a non-warranted representation must be one upon which the parties can be found to have proceeded in making the contract.

It thus appears that at common law the question of materiality of a warranty is not for the jury, while in the case of a mere representation it is. The question of materiality, in the former case, is one for the court solely in the construction of the contract; in the latter case it is for the jury as a matter of fact. The point was applied in *Metropolitan &c. Ins. Co.* v. *Olsen*, 81 N. H. 143, 147 where the application falsely stated that the beneficiary, with whom he lived, was his wife. "Whether the manner of life of the assured and beneficiary was blameless or blameworthy is immaterial unless the parties have made that conduct a material element of their contract. This is to be found ... from the terms of the contract and not by parol evidence as to what they intended ... But it is clear upon any reasonable construction of the language that the paragraph in each application upon which the claim to cancellation is based was not intended to affect the contract itself but merely to identify the beneficiary." As the statement, upon construction, could not be regarded as a part of the contract, it was not a warranty avoiding the contract. In that sense, "it is clear from the contract itself [page 148] that the statement was an immaterial one and was no part of the contract." As intent to defraud was not shown, there was no ground for cancellation of the policy. It may be taken as still law in New Hampshire that if a fraudulent statement in an application is to be regarded as a warranty, the question of "materiality" is not one of fact for the jury, but one of law for the court in determining whether the statement is material in the sense that it was intended by the parties to be a part of the contract. This view restricts the question to one of construction of the policy itself.

The language of the clause in the policy is the same as that of the statutes of New York and New Jersey. That has been construed to make a warranty of a fraudulent representation in an application incorporated into the policy. *Eastern &c. Works* v. *Insurance Co.*, *supra; Duff* v. *Insurance Co.*, 90 N. J. L. 646; *Guarraia* v. *Insurance Co.*, 90 N. J. L. 682; *Brunjes* v. *Insurance Co.*, 91 N. J. L. 296; *Kerpchak* v. *Insurance Co.*, 97 N. J. L. 196; *Prahm* v. *Insurance Co.*, 97 N. J. L. 206. The intention of the clause is that a wilful misstatement of any fact called for by the application and relating to the risk shall be treated as a warranty.

The sending to the jury of the question whether the representation was material to the risk opens up to them two fields of inquiry: (1) whether the matter inquired about was material to the risk when it was written, and (2) possibly in practice, if not in theory, whether, as indicated by the cause of death, it was material. Since the making of the contract, and not the payment of the death benefit, is the legal burden which the defendant seeks to avoid, it is clear that the latter consideration is entirely immaterial and that it would be error for it to be considered.

The submission to the jury of the issue of materiality to the risk as of the date of the application, or the policy, would permit the jury to consider such immaterial matters as the plaintiff has argued upon the question of good faith, viz. the disappearance of the albumin, the prospect whether it would ever return, and the consequent bearing of those factors upon a reasonable belief as to whether the applicant was a sound risk. The trouble with such a result, as already indicated, is that the insurer would ordinarily be bound to contract with an applicant in the belief that the answers are "complete and true," while the applicant might succeed in enforcing a contract obtained by wilful falsification and by fraudulently concealing certain facts that the insurer desires to elicit.

It is enough that the information requested has bearing upon the soundness of the risk. The insurer is entitled to it, and to freedom to contract or not as it sees fit after it has considered the information in all its bearings. If the applicant wilfully deprives the insurer of its free choice in the matter, there is no inviolable contract. No opinion of the jury, after the fact, that the applicant was a sound risk, can make the contract unavoidable. That issue of sound risk was one which the insurer had a right to determine upon "complete and true" answers regarding requested facts having to do with the applicant's medical history. *United Life &c. Co.* v. *Winnick*, 113 N. J. Eq. 288.

The beneficiary cannot hide behind wilful concealment of those facts and by a finding of the jury that the applicant was a good risk deprive the insurer of the decision whether or not the risk should be written.

The only "materiality" that need appear is that the information misrepresented had some bearing upon the risk, and that it was called for by the contract. The question in the application whether the applicant ever had albumin or blood in his urine is of that character. By his own stipulation, the applicant agreed that it was essential to the making of the contract. The making of the contract, it is proper to infer from the provisions thereof, was induced by belief of the defendant that the representations were "complete and true." *Locker* v. *Insurance Co.*, 107 N. J. L. 257. There is no evidence to warrant any other conclusion. The only reasonable conclusion is that the defendant was entitled to avoid the contract, and that the motion for nonsuit should have been granted.

We have not overlooked the marked division in authority as to whether the test of materiality is a material increase in the risk or a matter naturally and reasonably to influence the judgment of the insurer (see 73 A. L. R. 304), but have adopted the view that seems to us most consonant with reason as applied to the facts before us. Under policy provisions similar to those presented here, a false statement as to medical history is by the better view material as a matter of law. *Minsker* v. *Insurance Co.*, 254 N. Y. 333; *Mutual Life Ins. Co.* v. *Hilton-Green*, 241 U. S. 613; *Thomas* v. *Insurance Co.*, 65 N. D. 625, and cases cited. We do not say that in no case is the question of materiality or reliance upon the misrepresentation one of fact for the jury.

Consideration of the other exceptions is unnecessary in view of this result. Since the executrix of the will of the "Insured" does not appear to be a party, the right to a return of premiums paid need not be passed upon.

*Judgment for the defendant.*

BRANCH, J., did not sit: the others concurred.