Stratford v. Employers            CV-94-488-B   05/03/96
                 UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW HAMPSHIRE


Stratford School District

     v.                                    Civil No. 94-488-B

Employers Reinsurance Corporation, et al.



                          **O R D E R**

     Employers Reinsurance Corporation ("Employers") sold

Stratford School District ("Stratford") an errors and omissions

insurance policy covering certain claims that might be made

against Stratford between October 27, 1993, and July 1, 1994.

Peter Buffington sued Stratford while the Employers policy was in

effect, contending that former Stratford school teacher, Harry

Hikel, had sexually abused Buffington's daughter, Crystal.

Buffington claims that Stratford is liable, even though it did

not employ Hikel when the abuse allegedly occurred, because

Stratford negligently failed to report earlier claims that Hikel

had abused two Stratford students.  After Employers refused to

defend or indemnify Stratford, the school district filed this

declaratory judgment action.  Both parties have moved for summary

judgment and I resolve their motions as follows.

## I.  BACKGROUND

Harry Hikel was employed as a music teacher in the Stratford School District from 1979 until 1986.  In December 1983, two junior high school girls and their parents charged that Hikel had engaged in inappropriate sexual behavior with them at school. Specifically, the girls complained that on several occasions when each of them was alone with Hikel, he repeatedly kissed them and touched their upper bodies.  When Hikel was confronted with these allegations, he admitted that he hugged or kissed children from time to time but denied that he had ever done so in a sexual manner.

The school board held a hearing on the girls' charges on January 16, 1984.  The girls and their parents stood by their allegations and Hikel, accompanied by a representative of the National Education Association, denied the incidents.  At the conclusion of the hearing, the school board voted to send a letter of severe reprimand to Hikel.  One member voted against the reprimand and instead recommended that Hikel be dismissed. The board removed the two girls and all members of their families from Hikel's classes and prohibited Hikel from having any

2

physical contact with children other than when teaching a musical instrument, in the event of an emergency, or in self-defense. The restrictions also prohibited Hikel from meeting with students alone. Stratford did not report the alleged abuse to state officials as was required by New Hampshire Revised Statutes Annotated § 169-C:29.

Hikel left the Stratford school system in 1986 and went to work at the Mildred C. Lakeway Elementary School in Littleton, New Hampshire. One of his students there, Crystal Buffington, alleges that Hikel began sexually molesting her during the fall of 1990 and continued to do so until the fall of 1992. An article published in the Manchester Union Leader in 1993 reported Crystal's allegations without identifying her as the victim and also alleged that the Department of Education was investigating charges that Hikel had sexually abused students when he taught in Berlin[1] and Stratford.

On October 4, 1993, Stratford was served with a grand jury subpoena seeking Stratford's records concerning Hikel. Stratford

---

[1] An earlier newspaper article alleged that another of Hikel's former students had complained that Hikel had abused her twenty years earlier when she was a student at Berlin High School.

officials understood that the subpoena related to a criminal investigation of complaints that Hikel had sexually abused a Littleton student. These officials also understood that Hikel was being investigated by the State Board of Education.

Four days after Stratford learned of the grand jury subpoena, its business manager, Peggy Goodale, prepared an application for "claims made" school leaders errors and omissions insurance coverage through the New Hampshire School Boards Insurance Trust. The same day, Alfred St. Cyr, then superintendent of schools, reviewed and signed the application. The application included a series of questions. Question twenty-five asked:

> 25. Has the applicant, Board and/or its employees been involved in or have any knowledge of any pending federal, state or local legal actions or proceedings, including EEOC, against the entity, its board members, or employees within the last ten years? If yes, attach details stating nature of claim, date of claim, loss date, loss payments and disposition, carrier handling claims, etc.

Question twenty-six continued:

> 26. Are there any circumstances indicating the probability of a claim or action known by any person to be covered by this insurance? If yes, attach details.

Stratford answered "no" to both questions. The application also

4

included the following statement: "APPLICANT hereby warrants and represents that the statements and answers to questions made above and attachments hereto are true, to the best of his/her knowledge, and applicant has not omitted or misrepresented any information." Employers issued an errors and omissions policy to Stratford in reliance on Stratford's application.

Peter Buffington brought suit on Crystal's behalf against Hikel, and the Berlin, Stratford, and Littleton school districts in December 1993. The complaint charges that the Berlin and Stratford school districts were negligent and reckless in failing to report students' complaints of sexual assault by Hikel to law enforcement authorities and to other school districts interested in hiring Hikel. It also alleges that the school districts were negligent in hiring and supervising Hikel and are vicariously liable for Hikel's conduct. Stratford immediately notified Employers of the Buffington's claims and requested coverage. Employers responded with a letter denying coverage, and Stratford filed this declaratory judgment action.

## II. **STANDARD OF REVIEW**

Summary judgment is appropriate if the record taken in the

light most favorable to the nonmoving party shows that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Commercial Union Ins. Co. v. Walbrook Ins. Co., 7 F.3d 1047, 1049 (1st Cir. 1993).  Where the nonmoving party bears the burden of proof, the moving party initially need allege only the lack of evidence to support the nonmoving party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  The nonmoving party cannot rely on the pleadings alone to oppose summary judgment, but must come forward with properly supported facts to demonstrate that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

If the moving party will bear the burden of proof on an issue at trial, the court will grant summary judgment only if: "(1) the moving party initially produces enough supportive evidence to entitle the movant to judgment as a matter of law (i.e., no reasonable jury could find otherwise even when construing the evidence in the light most favorable to the non-movant), and (2) the non-movant fails to produce sufficient responsive evidence to raise a genuine dispute as to any material fact."  Murphy v. Franklin Pierce Law Center, 882 F. Supp. 1176,

6

1180 (D.N.H. 1994) (citing Fitzpatrick v. Atlanta, 2 F.3d 1112, 1115-17 (11th Cir. 1993)), aff'd, 56 F.3d 59 (1st Cir. 1995) (table).  A "material fact" is one "that might affect the outcome of the suit under the governing law," and a genuine factual issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When the facts are undisputed, the moving party can prevail only if it is entitled to judgment as a matter of law on the undisputed material facts. Desmond v. Varrasso (In re Varrasso), 37 F.3d 760, 764 (1st Cir. 1994).

In the present case, which is based upon New Hampshire Revised Statutes Annotated § 491:22 (Supp. 1994),[2] Employers bears the burden of proving non-coverage.  N.H. Rev. Stat. Ann. § 491:22-a (1983); Niedzielski v. St. Paul Fire & Marine Ins. Co., 134 N.H. 141, 147 (1991) (citing Laconia Rod & Gun Club v. Hartford Accident & Indem. Co., 123 N.H. 179, 182 (1983)).

---

[2] State remedies such as declaratory judgment are available in diversity actions in federal court. Titan Holdings Syndicate v. City of Keene, N.H., 898 F.2d 265, 273 (1st Cir. 1990) (citing Erie R. Co. v. Tompkins, 304 U.S. 64 (1938)).

# III. ANALYSIS

Employers contends that it is not obligated to defend or indemnify Stratford because: (1) Buffington's claims were "first made" before the policy went into effect; (2) Stratford made material misrepresentations in its insurance application; and (3) the conduct at issue is subject to a policy exclusion for malicious acts. I address the merits of each of these arguments in turn.

## A. The Policy Coverage Provision

The policy's coverage provision states: "This policy will apply only to claims first made against the Insured and reported to the Corporation during the policy period as specified in the Declarations." The policy definitions section provides:

> the term "Claims first made against the Insured and reported to the Corporation" shall mean that the Insured has received notice of legal process, or that a demand for money or services has been made against the Insured, or that the Insured has become aware of a proceeding, event or development which has resulted in or could in the future result in the institution of a claim against the Insured and that notice has been given in writing to the Corporation during the policy period.

It is undisputed that Stratford had not received either a settlement demand or notice of Buffington's lawsuit before the policy went into effect. Nevertheless, Employers argues that a

8

claim was "first made" before Stratford purchased the policy because Stratford knew of "a proceeding, event or development" which "could in the future result in the institution of a claim against the Insured."

Read literally, the policy's definition of "claims first made" could be construed to exclude any claims resulting from any "proceeding, event, or development" known to the insured that occurred before the policy went into effect. However, such a broad understanding of the phrase would convert this "claims made" policy into a hybrid "claims made" and "occurrence" policy under which both the event giving rise to the claim and the claim itself would have to fall within the policy period. The New Hampshire Supreme Court has recently rejected this interpretation when construing another "claims made" policy using similar language. International Surplus Lines Ins. Co. v. Manufacturers & Merchants Mutual Ins. Co., 661 A.2d 1192, 1194 (N.H. 1995). Accordingly, I construe the policy coverage provision at issue here to exclude only claims based on prior events that would alert a reasonable insured to the possibility that a claim might be brought.

Before Stratford purchased the Employers policy it was aware of the following pertinent information concerning Hikel: (1) two

9

Stratford students had complained in 1983 that Hikel had sexually molested them; (2) the school board's investigation of the complaints had resulted in a letter of severe reprimand to Hikel; (3) Stratford had not reported the girls' charges to state authorities or to the Littleton school district, Hikel's subsequent employer; (4) a grand jury had been convened to investigate allegations that Hikel had sexually abused a Littleton student; and (5) the grand jury had subpoenaed Stratford's records concerning Hikel. Only two types of claims could conceivably be brought against Stratford based on this information: claims by the two Stratford students who Hikel allegedly abused in 1983, and the claim that Buffington actually brought. Accordingly, I carefully examine the record to determine whether a reasonable insured in Stratford's position could have foreseen the possibility that a claim could be brought against Stratford based upon Hikel's actions.

But for the passage of time, Stratford could have foreseen that it might be sued by the two Stratford students. However, the six-year statute of limitations governing the students'

10

claims expired in 1989.[3] N.H. Rev. Stat. Ann. § 508:4 (1983). Accordingly, Stratford could not reasonably have anticipated that either student would bring an obviously time barred claim based on Hikel's alleged misconduct in 1983.

Stratford also had little reason to anticipate that it might be held responsible for Hikel's actions after he left its employ. Although Stratford arguably violated New Hampshire's abuse reporting statute, the New Hampshire Supreme Court has determined that the reporting statute will not support a private right of action. Marquay v. Eno, 139 N.H. 708, 716 (1995). Further, the only circumstances in which the court has recognized that a school district has a common law duty to protect students from sexual abuse are when the student has been entrusted to the school's care or when there is a causal connection between the employee's misconduct and the fact of employment. Id. at 716-19.

---

[3] New Hampshire's two-year tolling provision for claims by minors, New Hampshire Revised Statutes Annotated § 508:4, would not have significantly extended the statute of limitations. As Stratford points out, and Employers does not dispute, the girls were fourteen or fifteen years old in the fall of 1983 when they reported Hikel's alleged abuse. Ten years later, in October 1993, when Stratford applied for the Employers policy, the girls would have been twenty-four or twenty-five. In the meantime, they had not brought a claim based on those incidents, and the tolling provision for claims by minors would have expired on their twentieth birthdays in 1988 or 1989.

Neither circumstance is present here as Crystal was not a Stratford student (or otherwise entrusted to Stratford's care), and Hikel's alleged misconduct did not result from his employment by Stratford. New Hampshire has not recognized that a school district may be held liable for failing to take affirmative steps to protect persons who were never connected with the school from the future misconduct of a former employee. Accordingly, Stratford could not reasonably have foreseen the possibility that it might later be sued on this novel theory.[4]

The fact that Buffington eventually sued Stratford based on the Hikel incidents does not mean that Stratford reasonably could have foreseen the claim. It would be unjust to attribute foresight to an insured based on the hindsight gained from a subsequent litigant's assertion of a novel theory of liability. Accordingly, Buffington's claims were not "first made" before the policy period.

## B.  Stratford's Answers in the Policy Application

Employers argues alternatively that it is not obligated to

_____

[4]  The record does not contain evidence that Stratford made affirmative misrepresentations which induced Littleton to hire Hikel. Therefore, I do not consider whether Stratford could reasonably have anticipated the possibility that it might be sued on a negligent misrepresentation theory.

12

cover Stratford because it provided two false answers on its insurance application. Stratford counters that the answers were not false under the circumstances. I examine the questions in reverse order.

## 1. Question Twenty-Six

Question twenty-six asked: "Are there any circumstances indicating the probability of a claim or action known by any person to be covered by this insurance?" Stratford answered "no." Although the question might be interpreted to ask if any covered person knows of circumstances indicating the probability of a claim or action of any kind against anyone anywhere, such a broad construction obviously is unreasonable. Considered in context, I understand the question to ask whether the applicant knows of circumstances indicating the probability of a claim or action that would be covered by the insurance. For the reasons I have already outlined, Stratford truthfully answered that it did not know of circumstances indicating the <u>probability</u> of such a claim.

## 2. Question Twenty-Five

Question twenty-five asked: "Has the applicant, Board and/or its employees been involved in or have any knowledge of any pending federal, state or local legal actions or proceedings,

13

including EEOC, against the entity, its board members, or employees within the last ten years?" Stratford answered, "no." In determining whether this answer was incorrect, I begin by construing the question.

Employers contends that the placement of the phrase "within the last ten years" at the end of the question modifies both "actions or proceedings" and "employees." Thus, it argues that the question required Stratford to disclose any actions or proceedings that were pending within the last ten years against anyone who was a Stratford employee within the last ten years. Reading the question this way, Employers argues that Stratford's negative answer was false because Hikel had been a Stratford employee within the previous ten years, and both the Stratford school board hearing and the grand jury investigation were proceedings that had been pending against Hikel within the ten years prior to the application.[5]

Stratford argues that the phrase "within the last ten years" modifies only "actions or proceedings." Thus, Stratford contends

---

[5] Stratford also argues that the Department of Education's investigation of Hikel qualifies as a proceeding. I reject this argument because an agency investigation lacks sufficient formality to qualify as a "proceeding."

14

that the question required it to disclose only claims that were pending within the last ten years against current employees. Since Hikel was not a Stratford employee when the application was filed, Stratford argues, it had no obligation to disclose any proceedings involving Hikel.

It is quite possible that Employers intended question twenty-five to solicit information concerning both current and former Stratford employees. However, the question is awkwardly phrased and Stratford reasonably could have understood the question to seek only information concerning current employees. Under these circumstances, Stratford cannot be faulted for failing to construe the question to require the disclosure of claims or proceedings against former employees such as Hikel. See, e.g., Green Mountain Ins. Co. v. George, 138 N.H. 10, 14 (1993) (ambiguities in insurance policies are to be construed in favor of the insured). Therefore, Stratford did not give a false answer to question twenty-five.

Even if I were to construe question twenty-five in the manner Employers suggests, Stratford's answer, although

15

incorrect, would not be material.[6]  Employers' sole argument to the contrary is that an accurate answer would have alerted Employers to the likelihood that either Buffington or the two Stratford students would later sue Stratford.  However, as I have already determined, a reasonable person would not have anticipated the possibility that either Buffington or the Stratford students might sue Stratford based on knowledge of the grand jury investigation or the allegations of Hikel's misconduct ten years previously.  Therefore, Employers has not established that it has a triable case that Stratford's answer to question twenty-five contained material misrepresentations.

## C.    **Exclusion for Malice**

Finally, Employers asserts that Stratford's claim is barred by the policy exclusion for malicious acts.  The cited exclusion states that "[t]his policy does not apply to: (a) any dishonest, fraudulent or criminal act or intentional act performed with

---

[6]  Employers assumes that it must prove that Stratford's misrepresentations were material.  Accordingly, I need not consider whether Stratford could lose its right to coverage by making non-material misrepresentations.  See, e.g., Amoskeag Trust Co. v. Prudential Ins. Co. of America, 88 N.H. 154, 161 (1936); Dwyer v. Mutual Life Ins. Co. of N.Y., 72 N.H. 572, 573 (1904); Boardman v. New Hampshire Mutual Fire Ins. Co., 20 N.H. 551, 555 (1847).

16

intent to do malice."

Buffington has sued Stratford for negligence, vicarious liability, and breach of fiduciary duty. The complaint also includes allegations of malicious conduct directed to claims for enhanced damages. The malicious acts exclusion does not preclude Employers' duty to defend or indemnify Stratford for liability to the extent that Buffington is seeking to recover for Stratford's alleged negligence. Therefore, Employers is not entitled to prevail because of the exclusion.

## IV. CONCLUSION

Construing the record in the light most favorable to Employers, no reasonable juror could find that the grounds asserted by Employers would allow it to avoid its obligations to Stratford under the policy. Thus, Employers has not carried its burden of showing that its policy does not provide coverage. Stratford's motion for summary judgment (document no. 36) is granted, and Employers' motion for summary judgment (document no. 37) is denied.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

May 3, 1996

17

cc:  Bruce W. Felmly, Esq.
     Charles W. Grau, Esq.