MYRA V. SIMS, PLAINTIFF IN ERROR, v. WINFIELD S. SIMS ET AL., DEFENDANTS IN ERROR.

Argued March Term, 1910—Decided July 11, 1910.

1. Chapter 248 of the laws of 1906 *held* to confer upon a married woman the right to maintain an action in her own name, and without joining her husband therein to recover damages for a tort committed against her.
2. The alienation of the affections of the husband of a married woman is a tort committed against her to recover damages for which, under the provisions of the act of 1906, chapter 248, she may maintain an action in her own name and without joining her husband therein.

---

On error to the Supreme Court, whose opinion is reported in 48 *Vroom* 251.

For the plaintiffs in error, *Cortlandt & R. Wayne Parker.*

For the defendant in error, *Beecher & Bedford.*

The opinion of the court was delivered by

MINTURN, J. The suit was instituted to recover damages from defendants for maliciously enticing away the plaintiff's husband, and thereby alienating from her his affections. A demurrer was interposed upon the general ground that suit will not lie for such an injury, and the Supreme Court having sustained the demurrer the legal question thus raised is now presented upon writ of error.

The plaintiff bases her right to sue upon an act passed in 1906, entitled "An act for the protection and enforcement of the rights of married women." *Pamph. L.* 1906, *p.* 525. The act provides that "Any married woman may maintain an action in her own name and without joining her husband therein, for all torts committed against her, or her separate property, in the same manner as she lawfully might if a *feme sole;* provided, however, that this act shall not be so construed as to interfere with or take away any right of action at law or in equity now provided for the torts above mentioned." The second section provides that "Any action brought in accordance with the provisions of this act may be prosecuted by such married woman separately in her own name and the non-joinder of her husband shall not be pleaded in any such action."

It is urged in support of the demurrer that this act created no new right of action in behalf of the married woman, and that at common law no right of action existed for the tort alleged in this declaration; and this construction of the act was adopted by the Supreme Court.

The initial inquiry, therefore, must necessarily be made in the light of the fundamental rule of statutory construction, which requires us to search out the old law and the mischief that it engendered, in order to ascertain whether the remedial legislation with which we are now dealing was intended by the legislature to apply to such a condition.

In its early stages the common law notoriously enveloped the identity of the wife and all her possessions in the personality of the husband; and as late as *Alpaugh* v. *Wilson, 7 Dick. Ch. Rep.* 589, the doctrine, "that the rule of the common law that the husband and wife are to be regarded as one person" was held not to have been abrogated by legislation up to that period in this state.

That the right of *consortium* was recognized by the common law as an existing right in the married woman, however, but incapable of enforcement owing to the common law doctrine of identity of personality, is made clear by Blackstone, who, in his third volume dealing with "Private Wrongs," mentions a class in which the common law, failing to provide a remedy, recognized the right of the ecclesiastical courts, or their successor, to administer redress, not "for the reformation of the party injuring but for the sake of the party injured, to make him a satisfaction and redress for the damages which he has sustained." 3 *Bl. Com.* 87. Under this general topic the learned commentator treats of "Matrimonial causes, or injuries respecting the rights of marriage," and says: "The suit for the restitution of conjugal rights is also another species of matrimonial causes, which is brought whenever either the husband or wife is guilty of the injury of subtraction or lives separate from the other without any sufficient reason; in which case the ecclesiastical jurisdiction will compel them to come together again." *Ibid.* 94. This recognition by the common law of the fact that the loss of *consortium* was an injury to the wife, and that its enforcement was her right, and the corresponding failure on the other hand to provide her with a legal remedy for the tort, is properly definitive of her *status* at common law and places that branch of legal learning upon its proper footing.

From which it follows that if at any time the legislature should remove the common law impediment as to remedy, the right existing is thus made capable of enforcement under the remedial code. 21 *Cyc.* 1617, and cases cited.

That the common law courts failed to find a remedy is, under the decisions, rather a recognition of the right than a

denial of its existence.  For it may be said that the history of common law procedure is largely the history of substantive rights, remediless at first for lack of a suitable writ or precedent in the *Registrum Brevium,* until the persistence of the demand for a remedy developed the action of trespass on the case as a general specific *in consimili casu* under the provisions of the statute of *Westminster II.*

The following cases serve also to illustrate the existence of this right at common law : *Firebrace* v. *Firebrace,* 4 *P. D.* 63 ; *Yelverton.* v. *Yelverton,* 1 *Sw. & Tr.* 574 ; *Orme* v. *Orme,* 2 *Add. Eccl.* 382 ; *Reg.* v. *Jackson,* 1 *Q. B.* 685.

The very helpful briefs of the learned counsel in this case instance the case of *Lynch* v. *Knight,* 9 *H. L. Cas.* 577, which is highly instructive upon this phase of the question as illustrating the endeavor of the English judges at that time to supply a remedy for a conceded existing right. "Can it be," inquired the Chief Justice of the Irish Queen's Bench, "that for an injury of this sort a wife can have no redress ?  Is it possible to sustain the proposition?" When the case was determined upon another ground in the House of Lords, Lord Campbell said :  "Nor can I allow that the loss of *consortium* or conjugal society can give a cause of action to the husband alone; I think it may be a loss which the law may recognize to the wife as well as to the husband."

These sentiments have found expression and recognition in the adjudications of the highest courts of our states;  and now it may be fairly stated that the great weight of authority in this country supports the proposition that the right to the *consortium* of the husband was recognized at common law as a right inherent in the wife, enforceable, however, owing to the policy of the times, only in an action jointly by husband and wife.  *Bennett* v. *Bennett,* 116 *N. Y.* 584 ; *Foot* v. *Card,* 58 *Conn.* 1 ; *Seaver* v. *Adams,* 66 *N. H.* 142 ; *Haynes* v. *Nowlin,* 129 *Ind.* 581 ; *Knapp* v. *Wing,* 72 *Vt.* 334 ; *Smith* v. *Smith,* 98 *Tenn.* 101 ; *Bassett* v. *Bassett,* 20 *Ill. App.* 543 ; *Warren* v. *Warren,* 89 *Mich.* 123 ; *Westlake* v. *Westlake,* 34 *Ohio St.* 621 ; *Mehrhoff* v. *Mehrhoff,* 26 *Fed. Rep.* 13 ; *Rails-*

*back* v. *Railsback,* 12 *Ind. App.* 659; *Bailey* v. *Bailey,* 94 *Iowa* 598; *Hodgkinson* v. *Hodgkinson,* 43 *Neb.* 263.

So, too, the modern text-writers of authority support its existence. "By the great weight of authority," says Tiffany, "since the loss of service is not necessary to the action and the right to each other's society and comfort is reciprocal, a wife may maintain such an action, even at common law and in the absence of such a statute." *Domestic Relations* 78.

To the same effect are: *Jag. Torts* 467; *Big. Torts* 281; 21 *Cyc.* 1618.

. Three states alone have been classified as denying the existence of the right.

In Wisconsin, in the early case of *Duffies* v. *Duffies,* 76 *Wis.* 374, it was determined in effect upon the theory that the absence of remedy at common law determined the non-existence of the right. The case was followed upon the doctrine of *stare decisis* in *Lonstorf* v. *Lonstorf,* 118 *Wis.* 159, by a divided court, two of the learned judges contributing vigorous dissenting opinions to the discussion.

The adjudications in the Maine court rest upon opinion based upon the court's view of an expedient public policy in that state, and are of no force as arguments upon the question of the existence or non-existence of a common law principle. *Doe* v. *Roe,* 82 *Me.* 503; *Morgan* v. *Martin,* 92 *Id.* 190.

We are finally referred to the determination of our own Supreme Court in 1903 in *Hodge* v. *Wetzler,* 40 *Vroom* 490, which furnishes *ratio decidendi* for the determination of the Supreme Court in this controversy. Hodge *v.* Wetzler, however, as we read it, does not attempt to decide the question, but, *per contra,* Mr. Justice Hendrickson, in the absence of such a statute as that *sub judice,* and reviewing the question only from the power conferred by the then existing Married Woman's act (*Gen. Stat., p.* 2012) and the twenty-third section of the Practice act (*Gen. Stat., p.* 2536), concluded that these statutes did not confer the right of action. But upon the question as to the existence of the right at common law the learned justice was careful not to commit the court, and said: "We do not deem it necessary in this case to discuss the ques-

tion of abstract right, for the reason that conceding its existence, we fail to find a statute of this state, empowering a married woman to sue as a *feme sole* in actions of this character (at *p.* 492).

The question, therefore, presented in this case, in the light of the act of 1906, is *res nova,* and the conclusion we have reached is supported by the great weight of authority.

That this act was intended to confer the power upon a married woman to protect and enforce her rights, is the specific announcement contained in its title. The body of the act declares that she may maintain an action as a *feme sole* might lawfully do, and without joining her husband therein for all torts committed against her or her property. Keeping in mind the old law and the existing mischief, it becomes manifest that the legislative intent which inspired this remedial measure could have been only a desire to confer upon the married woman that equality of remedy as an independent suitor which would enable her to vindicate her right in *personam* for a tort committed against her, and thus remedy the inequality to which she was subjected by the common law.

The judgment of the Supreme Court should be reversed and judgment rendered in favor of the plaintiff *quod recuperet,* &c., and the record remitted to the Supreme Court for execution of a writ of inquiry and the entry of final judgment for the damages thus ascertained, with costs, including the plaintiff's costs in this court (2 *Tidd Pr.* 1180; *Meeker* v. *City of East Orange,* 48 *Vroom* 623), unless the Supreme Court shall, on application made for that purpose, grant leave to the defendants to plead to the merits of the action.

*For affirmance*—None.

*For reversal*—The Chancellor, Garrison, Parker, Bergen, Voorhees, Minturn, Bogert, Vredenburgh, Vroom, Gray, Dill, Congdon, JJ. 12.