WEST JERSEY AND SEASHORE RAILROAD COMPANY, APPELLANT, v. LAKE & RISLEY COMPANY, RESPONDENT.

Submitted October 12, 1928—Decided March 11, 1929.

Before Justices TRENCHARD, KALISCH and LLOYD.

For the appellant, *Bourgeois & Coulomb.*

For the respondent, *William I. Garrison.*

The opinion of the court was delivered by

LLOYD, J.  These were actions by the plaintiff to recover from the defendant small balances of charges for freight in interstate commerce transportation where a mistake had been made in the statement of the charges.  There was a judgment of nonsuit in the District Court of Atlantic City and plaintiff appeals.

The shipments of merchandise originated in North Carolina and Georgia, and were consigned one to a consignee in Philadelphia, another to a consignee in Pleasantville, and the third to a consignee in Middletown, Delaware.  These consignees by delivery orders directed further shipment of the merchandise to the defendant, Lake & Risley Company, at Pleasantville.  No charges had yet been paid on any of the shipments.  At the time of the delivery the defendant accepted the merchandise, paid the full amount of the charges then stated to be due and signed the delivery receipts.  It was later ascertained that this amount was less than the schedule of rates established and posted with the interstate commerce commission in accordance with the act of congress.

The District Court judge seems to have rested his decision on two cases in this state.  One, *Central Railroad* v. *McCartney,* 68 *N. J. L.* 165, and the other, *Pennsylvania Railroad* v. *Townsend,* 90 *Id.* 75, and these undoubtedly support the defendant's contention.

The cases cited were, however, dealing solely with the common law liability and none other.  There is no reference to

any statutory authority, nor, so far as appears, was the act of congress called to the court's attention. Plaintiff in the present cases bases its right to recover not on the common law but on the act of congress of February 4th, 1887, known as the Interstate Commerce act, and its amendments.

The question before us is, therefore, a federal and not a state problem, and is controlled by the decisions of the federal courts which as we think have ruled adversely to the respondent's contention. It is necessary to refer to but one. In the case of *Pittsburgh, Cincinnati, Chicago and St. Louis Railroad* v. *Fink*, 250 U. S. 577, decided in 1919, the United States Supreme Court declared that regardless of the common law as it stood prior to its enactment, the statute imposed upon the consignee when he accepted goods the payment of the full tariff rates as called for by the Interstate Commerce act and as filed with the interstate commerce commission. The court, after citing the statute and its terms which forbade the overcharge by any device and denying the right to remit any portion of the rates and fares established, says: "It was therefore unlawful for the carrier upon delivering the merchandise consigned to Fink to depart from the tariff rates filed. The statute made it unlawful for the carrier to receive compensation less than the sum fixed by the tariff rates duly filed. Fink, as well as the carrier, must be presumed to know the law, and to have understood that the rate charged could lawfully be only the one fixed by the tariff. * * * Under such circumstances consistently with the provisions of the Interstate Commerce act, the consignee was only entitled to the merchandise when he paid for the transportation thereof the amount specified by the statute. For the legal charges the carrier had a lien upon the goods and this lien could be discharged and the consignee become entitled to the goods only upon tender or payment of this rate. * * * The transaction in the light of the act amounted to an assumption on the part of Fink to pay the only legal rate the carrier had the right to charge or the consignee the right to pay." This plainly states the law here applicable.

The judgment of nonsuit is reversed.