17 N.J. Super. 480 (1952)
86 A.2d 438
JOHN SCHUTTLER, INDIVIDUALLY, ETC., AND HIS WIFE. PLAINTIFFS-RESPONDENTS,
v.
CHARLES REINHARDT AND HIS WIFE, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 7, 1952.
Decided January 23, 1952.
*483 Before Judges JACOBS, EASTWOOD and BIGELOW.
Mr. John E. Selser argued the cause for the respondents (Mr. Paul A. Vivers, attorney).
Mr. William V. Breslin argued the cause for the appellants.
The opinion of the court was delivered by BIGELOW, J.A.D.
This is a negligence case arising from an automobile collision at a street intersection. Each driver asserted that the other was at fault, but the jury placed sole responsibility on the defendant, Mrs. Reinhardt, and she and her husband appeal.
They argue for a reversal, first on the ground that the verdict was contrary to the weight of the evidence in that the plaintiff, Mrs. Schuttler, was guilty of contributory negligence. As she reached the intersection, that is, when she was opposite the near curb of the cross street, she saw appellant's car 100 or 150 feet away, approaching at "a moderate rate of speed." She continued on her way, and when she was a little more than halfway across the intersection, appellants' car struck her automobile toward the rear. As the roadway of the cross street was 30 feet wide, her motorcar seems to have travelled only 25 feet or so, while appellants' travelled 100 to 150 feet. There was evidence that as appellants neared the crossing, they increased the speed of their vehicle  a "sudden burst" of speed. Mrs. Schuttler admitted that after she first saw appellants' car, she did not look in its direction again until a moment before the collision. Her failure to keep an eye on the car constitutes her alleged negligence. We consider, however, that the jury might properly find that in the circumstances of *484 the case, reasonable prudence did not require her to be more watchful than she was. The verdict was not against the weight of the evidence.
Appellants next argue that the trial court should have granted their motion for a mistrial. Mrs. Schuttler was in a very nervous state during the trial. Twice, while she was on the witness stand, she broke down and wept. On each occasion appellants, although conceding Mrs. Schuttler's good faith, moved for a mistrial on the ground that the jury might be prejudiced in her favor by her tears. The court denied the motions but, at the request of appellants' counsel at the conclusion of the case, instructed the jury:
"I charge you: `You cannot permit passion, sympathy, bias or prejudice to enter into your considerations in deciding this case and the fact that a party may have presented to you by her emotional appearance upon the witness stand, a sympathetic reaction, it is your duty to disregard that and to comply with your oath and decide the case fairly and squarely on the evidence and the law given to you by the Court and you should not permit any other consideration to enter into your deliberations.'
That is an important charge in this case. We observed Mrs. Schuttler on the witness stand. You saw her crying and that fact alone should not have any effect upon your verdict. You must be just. You are not generous when you are giving other people's money away, so be just and decide the case fairly and squarely upon the evidence and your interpretation of it under the law as I have given it to you."
A motion for the withdrawal of a juror or for the declaration of a mistrial is addressed to the discretion of the trial judge. This is particularly true where the basis of the application is the display of a party's emotions. Serr v. Biwabik, etc., Co., 278 N.W. 355 (Minn. 1938). And see 53 Am. Jur., Trial, § 41. Formerly a denial of the motion could not be assigned as ground for reversal on writ of error. Bradley v. Cleary Co., 86 N.J.L. 338 (E. & A. 1914); Heiler v. Goodman's Motor, etc., Co., 92 N.J.L. 415; 3 A.L.R. 336 (E. & A. 1918). But in the course of the years, our appellate courts have come to consider that actions of the trial judge, commonly characterized as discretionary, may constitute a basis for reversal. For example, Braelow v. *485 Klein, 100 N.J.L. 156 (E. & A. 1924); and Waton v. Detroit Fid. & Sur. Co., 109 N.J.L. 71 (E. & A. 1932). In the two cases cited it was said that the discretionary ruling of the trial judge would not be disturbed except upon a clear showing "that such discretion has been improperly exercised." It has also been said that "The inquiry in all cases is whether injustice has been done," and that "the appellate court should not interfere unless it appears that appellant has suffered an injustice." Pepe v. Urban, 11 N.J. Super. 385 (App. Div. 1951). A more common statement is that the judgment will not be upset unless the trial judge has been guilty of an "abuse of discretion." But the phrase "abuse of discretion" does not seem to us to indicate the test that is actually applied in such cases, and we deprecate its continued use.
There are few problems presented to the trial judge that do not require an exercise of discretion. A discretionary power is not, of course, unbounded but is "confined to those limits within which an honest man, competent to the discharge of the duties of his office, ought to be confined." State v. Anderson, 1 N.J.L. 318 (Sup. Ct. 1795). The latitude of the discretion varies with the particular kind of question presented to the court and the circumstances under which it arises. If the court's ruling falls within the bounds so established, it will not be disturbed on appeal, but if the court goes beyond those confines, its action is considered not as discretionary but as erroneous. It is said in Cortese v. Cortese, 10 N.J. Super. 152 (App. Div. 1950), that there may be a reversal "when it appears that his judicial discretion was not properly exercised in the circumstances, and it also appears the error injuriously affected the substantial rights of a party." See also Smith v. Smith, 17 N.J. Super. 128 (App. Div. 1951). We would emphasize that it is only in the exceptional case that a discretionary act will lead to a reversal. The circumstance that the appellate judges, had they been presiding at the trial, would have made a contrary ruling, is far from enough to bring about a reversal.
A mistrial wastes the money of the parties and of the State; it wastes the time of witnesses and jurors. A *486 mistrial should be declared only as a result of some occurrence upon the trial of such a character that because of it one of the parties cannot have a fair trial. Ferino v. Palmer, 52 A.2d 433 (Conn. 1947). Rarely, there are happenings during a trial so striking that the jury is apt to be influenced by them despite any instructions from the court that they should disregard such happenings. But generally the situation may be effectively corrected by proper instructions and, when that can be done, the granting of a mistrial is unwarranted. Such is the case now before us. The denial of the motions for a mistrial is not a valid reason for reversal.
The next point argued is that the verdict in favor of the plaintiff husband is excessive. A husband, whose wife has sustained personal injuries from the negligence of a third person, may recover from the wrongdoer for the reasonable expense incurred by him for the care, treatment and cure of the wife, and for the loss of consortium, that is, her services and her society, companionship and comfort. 41 C.J.S., Husband and Wife, § 401, p. 896 et seq.; Clark v. Chaisson, 7 N.J. Misc. 269 (Sup. Ct. 1929); Giardelli v. Public Service Ry. Co., 8 N.J. Misc. 104 (Sup. Ct. 1930). If the proofs indicate that as a proximate result of the injuries the husband will continue in the future to suffer damage of the character mentioned, he is entitled to reasonable compensation for the anticipated future loss as well as for the past. Bedell v. Mandel, 108 N.J.L. 22 (Sup. Ct. 1931). And see Hopkins v. Atlantic, etc., Co., 36 N.H. 9; 72 Am. Dec. 287 (1857); Kimberly v. Howland, 55 S.E. 778; 7 L.R.A. (N.S.) 545 (N.C. 1906); Katz v. Cohn, 189 A. 594 (Conn. 1937). In order to recover for the loss of consortium, the husband need not prove a total loss of his wife's society and assistance, even for a limited time; it is enough if a partial loss or impairment be shown. Guevin v. Manchester St. Ry. Co., 99 A. 298; L.R.A. 1917C, 410 (N.H. 1916); Birmingham So. Ry. Co. v. Lintner, 38 So. 363; 109 Am. St. R. 40 (Ala. 1904); Furnish v. Missouri P.R. Co., 15 S.W. 315 (Mo. 1891). The loss of the "normal *487 companionship of a healthy wife" was considered an element of damage in Redfield v. Hurff, 9 N.J. Misc. 15 (Sup. Ct. 1930).
In the case at bar, the jury assessed the damages of the husband at $3,550. Of this sum, $1,050 covers damage to the automobile and medical expenses. The balance, $2,500, represents loss of consortium. In the accident which happened July 27, 1950, Mrs. Schuttler was terribly bruised and received a sprain of the lower back and a fractured skull. She was in the hospital until August 7, then taken to her mother's home, where she was confined to her bed for another ten days or two weeks. After that, she was able to be up, first for an hour or so a day; she improved steadily and was able to resume her usual occupations three or four months after the accident. A neurologist, Dr. Collins, who examined her January 31, 1951, found a "post concussion syndrome," and that she was suffering from a "severe neurosis." He thought her condition would improve but she might be subject to headaches and dizziness for a long time. Mrs. Schuttler, testifying at the trial during the last week in April, 1951, said "my head is the worst, the headaches, and I get dizzy if I bend down." Her husband, on being asked how the accident had affected his wife, replied, "She is an entirely different person. She can't sleep. She is very irritable. She is annoyed and she is just a changed person." If the jury believed this testimony, they presumably included in the wife's verdict, compensation for the headaches and dizziness and for the neurosis, or nervous disorder that Dr. Collins observed, and they could not rightly include these same factors, that is, the wife's suffering, in the husband's verdict. But the jury could properly award him compensation for the loss he sustained as a result of his wife's condition; they could take into consideration the worsening in the quality of his wife's companionship and help due to her nervousness and irritability. And the jury could also consider the liklihood that Mrs. Schuttler's condition might last some time longer. *488 Taking into account all the elements of damage, the verdict for the husband was not excessive.
The other reasons presented for reversal are without merit and require no discussion. The judgment is affirmed.