46 N.J. 82 (1965)
215 A.2d 1
HELEN EKALO, PLAINTIFF-APPELLANT,
v.
CONSTRUCTIVE SERVICE CORPORATION OF AMERICA, ET AL., DEFENDANTS-RESPONDENTS.
The Supreme Court of New Jersey.
Argued October 11, 1965.
Decided December 6, 1965.
*83 Mr. Robert N. Wilentz argued the cause for the appellant (Messrs. Wilentz, Goldman & Spitzer, attorneys).
Mr. Theodore W. Geiser argued the cause for the respondents (Messrs. Pindar, McElroy, Connell & Foley, attorneys for Mueller Co.; Messrs. Gordon, Mackenzie & Welt, attorneys for Elizabethtown Consolidated Gas Co.; Messrs. Carton, Nary, Witt & Arvanitis, attorneys for Texas Eastern; Messrs. Lynch, Murphy, Mannion & Lynch, attorneys for Constructive Service Corporation; Messrs. Burton, Seidman & Burton, attorneys for Allied Construction; Mr. C. Christian Stockel, Jr., attorney for International Smelting & Refining Co.).
The opinion of the court was delivered by JACOBS, J.
The trial court dismissed the plaintiff's complaint for failure to state a claim upon which relief could be granted. The plaintiff appealed to the Appellate Division and we certified before argument there.
*84 The complaint alleged, inter alia, that the plaintiff's husband Michael, while on a public street in Perth Amboy, was seriously injured when an explosion occurred as a result of the defendants' negligent construction and maintenance of a gas line and that because of the defendants' negligence she suffered loss of her husband's "services, society and consortium" for which she seeks money damages. Since the complaint was dismissed prior to the taking of any testimony we know nothing about the nature of the husband's injuries except that which is set forth in the plaintiff's brief and in its accompanying excerpts from a deposition by the husband in a separate proceeding which he has instituted in the Law Division. The brief asserts that although Michael was "a normal man and had a normally happy marriage and home life," since the accident he merely sits around the house, refuses for the most part to see friends and relatives, engages in no social activities, and "is totally unable to have sexual relations" with his wife. Her claim is that as a proximate result of the defendants' negligence, she has been transformed "from a loving wife into a lonely nurse" and that her very real loss may not justly be permitted to go uncompensated.
In dismissing the complaint, the trial court considered itself bound by the Appellate Division's holding in Larocca v. American Chain & Cable Co., 23 N.J. Super. 195 (App. Div. 1952). There a husband and wife sued for injuries allegedly resulting from the defendant's negligent conduct. The husband sought damages for his physical injuries and the wife sought damages for the deprivation of her husband's aid, society and conjugal fellowship, commonly known as consortium. The trial court dismissed as to the wife on the ground that her claim was not cognizable in the law and dismissed as to the husband for lack of a sufficient showing of liability on the part of the defendant. The Appellate Division, while sustaining the dismissal as to the wife, reversed as to the husband on the finding that there was enough evidence to go to the jury with respect to his claim. In this court, we affirmed as to the husband, and since no review had been sought before us *85 by the wife, we stated that there was no occasion to consider the soundness of the Appellate Division's holding that a wife may not assert a claim for loss of consortium resulting from a defendant's negligence. See Larocca v. American Chain & Cable Co., 13 N.J. 1, 4 (1953). We now, for the first time, have that issue squarely presented for our determination; such earlier expressions as may be found in our State on the subject are inconclusive and not at all controlling. See Sims v. Sims, 79 N.J.L. 577 (E. & A. 1910); Tobiassen v. Polley, 96 N.J.L. 66 (Sup. Ct. 1921); Danek v. Hommer, 14 N.J. Super. 607, 615 (Essex Cty. Ct. 1951), affirmed 9 N.J. 56 (1952); Alfone v. The Newark Umbrella Frame Co., 13 N.J. Super. 526, 528-529 (Essex Cty. Ct. 1951).
It was well recognized at common law that a defendant who intentionally or negligently injured a married woman could be held liable to her husband for the loss of his wife's consortium. See 1 Harper & James, Torts § 8.9 (1956); Salmond, Torts § 179 (12th ed. 1957). The husband's action admittedly originated at a time in history when the wife was wholly subservient and her loss was viewed by the law primarily in terms of the deprivation of her services; nevertheless the husband's action is widely accepted as a continuing one in these modern times of reciprocal spousal equality and is not dependent on an allegation of loss of services. See Guevin v. Manchester St. Ry., 78 N.H. 289, 99 A. 298 (1916); Shreve v. Faris, 144 W. Va. 819, 111 S.E.2d 169 (1959); Pound, "Individual Interests in the Domestic Relations," 14 Mich. L. Rev. 177, 188 (1916); see also Sims v. Sims, supra, 79 N.J.L., at p. 581. In New Jersey, the husband's cause of action per quod, for the loss of consortium attributable to injuries tortiously inflicted on his wife, has been long and firmly established and is not in serious question here. See Nuzzi v. United States Casualty Co., 121 N.J.L. 249, 254 (E. & A. 1938); Schuttler v. Reinhardt, 17 N.J. Super. 480, 486 (App. Div. 1952); Clark v. Chaisson, 7 N.J. Misc. 269, 145 A. 226 (Sup. Ct. 1929); Caswell v. North Jersey St. Ry. Co., 69 N.J.L. 226 (Sup. Ct. 1903); *86 cf. Blanken v. Braslow, 130 N.J.L. 475 (Sup. Ct. 1943); Bedell v. Mandel, 108 N.J.L. 22 (Sup. Ct. 1931); Redfield v. Hurff, 9 N.J. Misc. 15, 152 A. 451 (Sup. Ct. 1930); Annot., 133 A.L.R. 1156, 1157 (1941).
The common law did not recognize any consortium action in the wife but this was understandable in the light of its medieval concept that, during the marriage, the legal existence of the wife was suspended or incorporated into that of the husband. 1 Blackstone, Commentaries § 442. With the alteration of the status of women and the adoption of Married Women's acts, state courts quickly recognized the wife's consortium action where the defendant's wrong was an intentional one. See Prosser, Torts § 118, at pp. 903-904 (3d ed. 1964). This was done in New Jersey in 1910 by our then court of last resort in Sims v. Sims, supra, 79 N.J.L. 577. See Alfone v. The Newark Umbrella Frame Co., supra, 13 N.J. Super., at p. 530.
In Sims the wife brought an action to recover damages from the defendants for having maliciously enticed away her husband and alienated his affections. Rejecting earlier holdings of lower courts, the Court of Errors and Appeals held that such an action could be maintained.[1] After referring to the antiquated common law notions which had enveloped the identity of the wife into that of the husband and had imposed gross procedural disabilities upon her, the court had this to say with respect to the sweep of our legislation relating to married women (see R.S. 37:2-1 et seq.):
*87 "Keeping in mind the old law and the existing mischief, it becomes manifest that the legislative intent which inspired this remedial measure could have been only a desire to confer upon the married woman that equality of remedy as an independent suitor which would enable her to vindicate her right in personam for a tort committed against her, and thus remedy the inequality to which she was subjected by the common law." 79 N.J.L., at p. 582.
Despite the breadth of the court's language in Sims, a motion to strike a wife's complaint for loss of consortium resulting from the negligent infliction of bodily injury on her husband, was granted by a single Justice in Tobiassen v. Polley, supra, 96 N.J.L. 66, on the ground that Sims dealt only with an intentional wrong and was not to be extended to a negligent wrong. The Justice took the position that the injury to the wife was an indirect one rather than a direct one as in Sims and relied on an Ohio case and on similar out-of-state decisions which had held that, notwithstanding their Married Women's Acts, a wife could not maintain an action for loss of consortium resulting from personal injury caused to her husband "by the negligence of a stranger." 96 N.J.L., at p. 68; Smith v. Nicholas Bldg. Co., 93 Ohio St. 101, 112 N.E. 204 (1915); Brown v. Kistleman, 177 Ind. 692, 98 N.E. 631 (1912); Emerson v. Taylor, 133 Md. 192, 104 A. 538 (1918).
The Ohio decision had the effect of disapproving the earlier holding in Griffen v. Cincinnati Realty Co., 27 Ohio Dec. 585 (Super. Ct. 1913), where the court had pointed out that a wife could not, at common law, maintain an action for the loss of her husband's aid, society and conjugal fellowship because, as Blackstone put it, she had no property rights in them; that there had been a gradual emancipation of married women "since Blackstone's benighted day" culminating in statutes recognizing her property rights and establishing her equality with her husband; and that since "a husband might sue for loss of the consortium of his wife in the event of her injury, without alleging willfulness or malice on the part of the tort-feasor, so the wife may maintain an action under the same circumstances." 27 Ohio Dec., at p. 590.
*88 Although these views received some early expressions of support (see Clark, C.J., in Hipp v. E.I. Dupont De Nemours & Co., 182 N.C. 9, 108 S.E. 318 (1921), disapproved in Hinnant v. Tide Water Power Co., 189 N.C. 120, 126 S.E. 307 (1925); Bond, C.J., dissenting in Bernhardt v. Perry, 276 Mo. 612, 208 S.W. 462 (1918); Scudder, J., dissenting in Landwehr v. Barbas, 241 App. Div. 769, 270 N.Y.S. 534 (1934); see also McDade v. West, 80 Ga. App. 481, 56 S.E.2d 299 (1949)), it was not until the Hitaffer decision in 1950 that a really telling attack was made on the decisions throughout the country which had persisted in confining the wife's consortium action to intentional wrongs while extending the husband's consortium action to both intentional and negligent wrongs. See Hitaffer v. Argonne Co., 87 U.S. App. D.C. 57, 183 F.2d 811, 23 A.L.R.2d 1366 (D.C. Cir.), certiorari denied 340 U.S. 852, 71 S.Ct. 80, 95 L.Ed. 624 (1950); Igneri v. Cie. de Transports Oceaniques, 323 F.2d 257, 260 (2 Cir. 1963), certiorari denied 376 U.S. 949, 84 S.Ct. 965, 11 L.Ed.2d 969 (1964); Prosser, supra, at p. 918. In Hitaffer the Court of Appeals for the District of Columbia held that a wife could maintain a cause of action for loss of consortium resulting from the negligent injury of her husband and, in the course of its opinion, discussed and rejected each of the arguments which had been advanced from time to time for the contrary view. 183 F.2d, at pp. 813-819.
In Danek v. Hommer, supra, 14 N.J. Super., at p. 615, the trial court expressed its thought that Hitaffer was well-founded; in an ever increasing number of our sister states, although not yet a majority (Igneri, supra, 323 F.2d, at p. 261), Hitaffer has been explicitly followed. See Missouri Pac. Transp. Co. v. Miller, 227 Ark. 351, 299 S.W.2d 41 (1957); Yonner v. Adams, 3 Storey 229, 53 Del. 229, 167 A.2d 717 (Super. Ct. 1961); Brown v. Georgia-Tennessee Coaches, Inc., 88 Ga. App. 519, 77 S.E.2d 24 (1953); Dini v. Naiditch, 20 Ill.2d 406, 170 N.E.2d 881 (1960); Acuff v. Schmit, 248 Iowa 272, 78 N.W.2d 480 (1956); Montgomery v. Stephan, 359 Mich. 33, 101 N.W.2d 227 (1960); Novak *89 v. Kansas City Transit, Inc., Mo., 365 S.W.2d 539 (1963); Hoekstra v. Helgeland, 78 S.D. 82, 98 N.W.2d 669 (1959); see also Duffy v. Lipsman-Fulkerson & Co., 200 F. Supp. 71 (D. Mont. 1961); Cooney v. Moomaw, 109 F. Supp. 448 (D. Neb. 1953); Luther v. Maple, 250 F.2d 916, 922 (8 Cir. 1958); cf. Smith v. Smith, 205 Or. 286, 287 P.2d 572, 577 (1955); Ross v. Cuthbert, 239 Or. 429, 397 P.2d 529, 530 (1964); Mariani v. Nanni, R.I., 185 A.2d 119 (1962); Clem v. Brown, 3 Ohio Misc. 167, 207 N.E.2d 398 (C.P. 1965).
Most of the academic commentators have expressed firm support for Hitaffer. See 1 Harper & James, supra, § 8.9; Prosser, supra, at pp. 916-919; Holbrook, "The Change in the Meaning of Consortium," 22 Mich. L. Rev. 1 (1923); Lippman, "The Breakdown of Consortium," 30 Colum. L. Rev. 651 (1930); Simeone, "The Wife's Action for Loss of Consortium  Progress or No?," 4 St. Louis U.L.J. 424 (1957); Foster, "Relational Interests of the Family," 1962 U. Ill. L.F. 493, 525-527 (1962); Fridman, "Consortium as an `Interest' in the Law of Torts," 32 Can. B. Rev. 1065 (1954); Brett, "Consortium and Servitium, A History and Some Proposals" (Pts. 1-3), 29 Austl. L.J. 321, 389, 428 (1955); Note, "Judicial Treatment of Negligent Invasion of Consortium," 61 Colum. L. Rev. 1341 (1961); Comment, 15 Rutgers L. Rev. 128 (1960); 39 Cornell L.Q. 761 (1954); 20 Fordham L. Rev. 342 (1951); 41 Geo. L.J. 443 (1953); 64 Harv. L. Rev. 672 (1951); 35 Ky. L.J. 220 (1947); 55 Mich. L. Rev. 721 (1957); 39 Mich. L. Rev. 820 (1941); 25 Tul. L. Rev. 293 (1951); 1 U.C.L.A.L. Rev. 223 (1954); cf. Pound, supra, at pp. 193-195; but see Jaffe, "Damages for Personal Injury: The Impact of Insurance," 18 Law & Contemp. Prob. 219, 228-230 (1953).
The arguments which led to the denial of the wife's action in Tobiassen v. Polley, supra, 96 N.J.L. 66, were convincingly refuted in Hitaffer and in the cases which have followed it. The position that her injuries are indirect or too remote to warrant legal protection runs counter to basic principles of *90 negligence and causation and is incompatible with the traditional allowance of the husband's action. Her loss when he suffers an accident with the consequences alleged by the plaintiff Ekalo here, is as immediate and direct as his would be if she had been the subject of the accident. See Hitaffer, supra, 183 F.2d, at p. 817; Montgomery v. Stephan, supra, 101 N.W.2d, at p. 231. The absence of any claim on the wife's part for loss of services should not defeat her action any more than it would defeat an action by the husband which expressly disavows any claim for loss of services as such but nonetheless seeks compensation for loss of his wife's aid, comfort and conjugal fellowship. See Hitaffer, supra, 183 F.2d, at p. 817; Dini v. Naiditch, supra, 170 N.E.2d, at p. 891; cf. Sims v. Sims, supra, 79 N.J.L., at p. 581; Pound, supra, 14 Mich. L. Rev., at p. 188; see also Schuttler v. Reinhardt, supra, 17 N.J. Super., at pp. 486-487.
In Tobiassen the Justice mentioned that the husband who suffered the physical injuries could recover in his own action for loss of earning power and that his recovery "would enure to the benefit of his wife in that particular"; (96 N.J.L., at p. 68); and he referred to the danger of double recovery if the wife's action for loss of consortium were permitted to include any damages based on her husband's loss of earning power. Hitaffer met that point directly by noting that the wife's action would be confined to her independent loss of consortium, exclusive of any impairment of her husband's earning capacities for which he would be compensated. 183 F.2d, at p. 819; Yonner v. Adams, supra, 167 A.2d, at p. 728; Cooney v. Moomaw, supra, 109 F. Supp., at p. 451.
In Dini v. Naiditch, supra, the court pointed out that double recovery could readily be obviated by specifically restricting recovery to her own elements of loss "which are in no way compensable in the husband's action." 170 N.E.2d, at p. 891. And, more recently, in Novak v. Kansas City Transit, Inc., supra, the Missouri Supreme Court, in overruling its earlier decision in Bernhardt, supra, 276 Mo. 612, 208 S.W. *91 462, disposed of the double recovery argument in the following manner:
"Equally fallacious is the second reason stated in the Bernhardt opinion, viz., that to permit the wife to maintain an action such as the present could result in her recovery of double damages. That conclusion fails to take into account the fact that the loss for which the wife is entitled to damages is a separate and distinct personal loss suffered by her, which, under the Married Women's Act, is exclusively hers, and which properly is not includable within the damages the husband should recover for his personal injury. It is true, of course, that when full pecuniary compensation is paid to a husband by reason of injuries he has sustained, a wife shares to some extent in the benefits of that recovery and certainly she should not be permitted to recover any of the same damages the husband has recovered in his action. Such result may be avoided by delineating accurately the items properly includable in the husband's damages and by permitting the wife in her separate action to recover for the loss of only those elements of consortium which, under the facts of a particular case, represent separate and distinct losses to her. As stated in Prosser on Torts, 2d Ed., Ch. 22, p. 704: `There remains of course the important fact that the husband is under the duty to support his wife, so that any compensation for loss of earning power paid to him goes indirectly to benefit her, while the wife is under no such corresponding duty. This must of course be taken into account in any determination of her damages. But such elements of damage as her loss of the husband's society and affection, and in some cases even the expenses to which she has been put in caring for him, remain uncompensated.'" 365 S.W.2d, at pp. 543-544.
See Cooney v. Moomaw, supra, 109 F. Supp., at pp. 450-451; Hoekstra v. Helgeland, supra, 98 N.W.2d, at p. 682.
The defendants urge that denial of the wife's consortium action would find sensible foundation in the fact that a jury will ordinarily consider the other spouse's loss of consortium and will allow "a full and complete recovery for the family" in the main action by the spouse who suffered the accident. But if that be so, would it not be more just and more forthright for the law to recognize with equality the respective claims and compel their joinder in a single proceeding during which a jury could be fully and fairly instructed as to the nature and limits of the independent demands for recovery. See Green, "Relational Interests," 29 *92 Ill. L. Rev. 460, 467 (1934). Such a requirement of joinder would furnish additional protection against the suggested danger of double recovery. Cf. Schaefer, C.J., dissenting in Dini v. Naiditch, supra, 170 N.E.2d, at p. 895; see Foster, supra, 1962 U. Ill. L.F., at p. 527. In recognizing a wife's claim for loss of consortium, we may, of course, condition it upon joinder with her husband's claim; in any event, our rule-making powers are clearly comprehensive enough to support a new rule requirement that all claims by husbands and wives for physical injuries and consortium losses resulting from negligent conduct by others must be joined so that they may be tried before a single jury or before a single judge if a jury be waived. See N.J. Const. 1947, Art. VI, § 2, par. 3; cf. R.R. 4:31; Korff v. G and G Corp., 21 N.J. 558, 567 (1956); but cf. Igneri v. Cie de Transports Oceaniques, supra, 323 F.2d, at p. 264.
The defendants refer to the fear that recognition of the wife's claim may necessitate the allowance of recovery to other members of the family and inordinately expand a defendant's liability for losses resulting from his negligence (Larocca, supra, 23 N.J. Super., at p. 199). See Neuberg v. Bobowicz, 401 Pa. 146, 162 A.2d 662, 666 (1960). The law has always been most solicitous of the husband and wife relationship, perhaps more so than the parent and child relationship. See Magierowski v. Buckley, 39 N.J. Super. 534, 541 (App. Div. 1956). In any event, policy rather than logic is the determinative factor and, while persuasive arguments may be mustered in favor of the child's claim (Prosser, supra, at p. 919), the reciprocal recognition of the wife's claim may readily be rested on its own footing of equality and justice without any compulsion of going further. See Pleasant v. Washington Sand & Gravel Co., 104 U.S. App. D.C. 374, 262 F.2d 471 (D.C. Cir. 1958). Any suggested danger of excessive recovery should be no more real when dealing with the wife's claim than it has proved to be in the cases involving the husband's claim. See, e.g., Schuttler v. Reinhardt, supra, 17 N.J. Super., at pp. 487-488; Shreve v. Faris, supra, 111 S.E.2d, *93 at p. 173; see also Bedell v. Mandel, supra, 108 N.J.L., at p. 26; Redfield v. Hurff, supra, 9 N.J. Misc., at p. 17. In Missouri Pac. Transp. Co. v. Miller, supra, 299 S.W.2d, at pp. 48-49, the Missouri Supreme Court, believing that the particular jury allowance to the wife in the case before it was excessive, exercised its power of remittitur to bring it in line; there is of course no question as to the power of New Jersey's trial and appellate courts to exercise similar control. See Fisch v. Manger, 24 N.J. 66 (1957).
A handful of courts, recognizing the incongruity of denying the wife's claim while continuing the husband's claim for loss of consortium, have chosen to reject both claims. See Marri v. Stamford St. R. Co., 84 Conn. 9, 78 A. 582 (1911); cf. Roseberry v. Starkovich, 73 N.M. 211, 387 P.2d 321 (1963); Kronenbitter v. Washburn Wire Co., 4 N.Y.2d 524, 176 N.Y.S.2d 354, 151 N.E.2d 898 (1958); Jaffe, supra, 18 Law & Contemp. Prob., at p. 229. We are not disposed towards that course for we consider that its taking would be in disregard of the pertinent policy considerations; those considerations have been repeatedly voiced in recent decisions expanding tort liability in the just effort to afford decent compensatory measure to those injured by the wrongful conduct of others. See Falzone v. Busch, 45 N.J. 559 (1965); Schipper v. Levitt & Sons, Inc., 44 N.J. 70 (1965); McAndrew v. Mularchuk, 33 N.J. 172 (1960); Duffy v. Bill, 32 N.J. 278 (1960); Smith v. Brennan, 31 N.J. 353 (1960); Collopy v. Newark Eye and Ear Infirmary, 27 N.J. 29 (1958); cf. Simeone, supra:
"The policy of the law has been to expand areas of compensation. Both legislative and judicial developments bear this out. The unfortunate who finds himself cast upon the scrap heap by industrial progress today shares that burden with the rest of society, by his right of action for tort. When a man is injured by another's wrong, separate injuries occur to him and his wife. The husband is often, because of an injury, reduced to a physical and psychological skeleton; the wife, because of the same injury, is deprived of the affection, society and comfort that only her husband can give. While the husband suffers physical pain, the loss to the wife is often more significant. If damages are to be awarded to the wife, they are to compensate *94 her for her loss. This loss of the wife should outweigh any concern for the additional imposition of liability upon the wrongdoer." Simeone, supra, 4 St. Louis U.L.J., at p. 438
See also Holbrook, supra, 22 Mich. L. Rev., at pp. 8-9; Prosser, supra, at pp. 916-919.
In Falzone v. Busch, supra, we explicitly disapproved Ward v. West Jersey & Seashore R.R. Co., 65 N.J.L. 383 (Sup. Ct. 1900), which was cited and relied upon by the defendants here. The complaint in Falzone alleged that the defendant negligently drove his automobile, striking Charles Falzone and frightening his wife Mabel Falzone, who was nearby, thereby putting Mrs. Falzone in fear of her own safety and causing her to become ill and require medical attention. The defendant contended that Mrs. Falzone could have no cause of action because there had been no physical contact between her and his automobile. In rejecting this contention, Justice Proctor, speaking for the entire court, pointed to the considerations of policy which strongly favored her claim for compensation from the tortfeasor whose negligence had proximately resulted in her injury and aptly noted that "the fear of an expansion of litigation should not deter courts from granting relief in meritorious cases." 45 N.J., at p. 567.
Similarly in Smith v. Brennan, supra, we disapproved an earlier decision and held that an infant plaintiff could maintain an action for prenatal injuries suffered by him when his mother was seriously injured in an automobile collision allegedly caused by the negligence of the defendants. Stressing the policy considerations, we expressed the view that the plaintiff should justly have his own right of action for his own loss, and in response to the contention that the matter must be left to the Legislature, we pointed out that since the earlier ruling of nonliability was judge-made, it could, under settled principles of common law, readily be changed by judges to meet changing concepts and times. 31 N.J., at pp. 361-362; Collopy v. Newark Eye and Ear Infirmary, supra, 27 N.J., at p. 42; McAndrew v. Mularchuk, supra, 33 N.J., at pp. *95 193-194; Faber v. Creswick, 31 N.J. 234, 241 (1959). The same may be said in answer to those who, while conceding the indefensibility in today's society of denying the wife's consortium claim though the husband's claim continues, nonetheless suggest that the archaic common law differentiation should remain unaltered until the legislature chooses to act. See, e.g., Page v. Winter, 240 S.C. 516, 126 S.E.2d 570 (1962); Smith v. United Construction Workers, District 50, 271 Ala. 42, 122 So.2d 153 (1960).
In the ultimate, the acceptance or rejection of the wife's consortium claim must be rested on sound policy considerations and a proper balancing of the interests concerned. While engaging in their activities, the defendants clearly came under the comprehensive common law duty of due care with tort liability for its breach. If, as alleged, they acted without due care causing serious bodily injury to the husband and consortium deprivation to the wife, they should, in all justice, be held liable in fair measure for the respective losses. Those losses were immediate and consequential rather than remote and unforeseeable and, there being no sufficient countervailing policy, the law now rightly views them as remediable by the responsible tortfeasors. At oral argument it was conceded that the action by the wife should be joined with the pending action by the husband to the end that they may be tried before a single jury, or a single judge if a jury be waived. Subject to the entry of an order to that effect, the dismissal of the plaintiff's complaint is set aside.
One final item requires mention here. Many claims by husbands for physical injuries caused by alleged tortfeasors have heretofore been effectively barred by settlement, judgment or otherwise; in those particular instances it would be grossly unfair to permit the assertion, for the first time, of a consortium claim by the wife and nothing in our opinion is to be taken as having that effect. However, where the husband's claim has not been barred and an action on his behalf is actually pending, the wife's consortium claim, if not itself barred by limitations, may now be joined in the husband's action. In *96 all future actions, the wife's consortium claim may be prosecuted only if joined with the husband's action.
Reversed.
For reversal  Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, HALL and SCHETTINO  5.
For affirmance  None.
NOTES
[1] Alienation of affections and comparable actions by both husbands and wives have been abolished by the New Jersey Legislature. See N.J.S. 2A:23-1. Since this was done to prevent the "extortion and blackmail" which often accompanied such actions (Grobart v. Grobart, 5 N.J. 161, 167 (1950)), it has no significant bearing on the present issue of whether a wife should now have, as her husband now has, a right to maintain an action for loss of consortium resulting from physical injuries negligently inflicted by the tortfeasor. Cf. Blackman v. Iles, 4 N.J. 82 (1950).