290 N.J. Super. 676 (1996)
676 A.2d 611
MARY THALMAN, INDIVIDUALLY AND AS ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF FRANK THALMAN, PLAINTIFF-RESPONDENT/CROSS-APPELLANT,
v.
OWENSCORNING FIBERGLAS CORPORATION, ET AL., DEFENDANT-APPELLANT/CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 28, 1995.
Decided May 30, 1996.
*680 Before Judges KEEFE, WEFING and A.A. RODRIGUEZ.
Perry A. Gandleman, argued the cause for appellant/cross-respondent (Tucker, Biegel & Goldstein, attorneys; Andrew Constantine, II, and Mr. Gandleman on the briefs).
Joshua M. Spielberg argued the cause for respondent/cross-appellant (Tomar, Simonoff, Adourian & O'Brien, attorneys; Gregg A. Shivers, on the brief).
The opinion of the court was delivered by A.A. RODRIGUEZ, J.A.D.
Plaintiff brought this action to recover damages for the illness and death of her husband Frank Thalman, resulting from a malignant mesothelioma, a rare and fatal cancer of the lining of the lungs caused by exposure to asbestos. Plaintiff sued thirty-one manufacturers of asbestos-containing products, but proceeded to trial only against Owens-Corning Fiberglas (Owens). Prior to trial, Owens and plaintiff agreed that Owens would be responsible for 19% of the damages. The jury found the following damages: $1,500,000.00 for pain and suffering, $168,000.00 for loss of consortium, and $300,000.00 for wrongful death. The judge remitted the gross amount for loss of consortium to $50,000.00 and for wrongful death to $150,000.00, pursuant to R. 4:49-1(a). Owens appeals from the judgment, and plaintiff cross-appeals from the order granting remittitur. We reverse the remittitur and affirm all aspects of the jury award.
Frank Thalman worked as a pipefitter from 1942 to 1984. During that period he was exposed to asbestos-containing products. He suffered from a number of non-asbestos related health problems. In 1983, he was diagnosed with heart disease, had a heart attack, and underwent triple bypass heart surgery. He *681 recovered from his cardiac surgery sufficiently to return to work and his usual activities. In March 1987, Thalman suffered from emphysema. In May 1987, Thalman was hospitalized for decortication surgery of a "trapped" lung. This procedure is designed to alleviate restrictions of the lung by surgically removing a thickened covering on the lung. Plaintiff's expert and treating pulmonologist Alan R. Pope, M.D., testified that the decortication revealed the onset of what was eventually diagnosed as a mesothelioma. At the time of the decortication surgery, the pathology was inconclusive. Dr. Pope testified that,
Clinically, he had behaved as if it were a mesothelioma, a cancer involving the lung and ultimately when we look at what the pathology was of the cancer when it involved the abdomen, it was a fibrous type of mesothelioma. Scar type is maybe a layman's way of thinking of it. So in retrospect, I think it is very likely that actually the thickening was, in fact, mesothelioma at that time.
Q. And, so I'm clear, is it your opinion to a reasonable degree of medical probability that the thickening which caused the trapped lung was, in fact, the beginning of the mesothelioma?
A. Yes, it is. That's correct.
In June 1987, Thalman was readmitted to the hospital to treat an infection that developed as a result of the decortication. He returned home at the end of July 1987. He gradually deteriorated to a point where he had to rely on his wife and family to wash, shave and dress him. On April 13, 1988, Thalman was admitted to the hospital for the last time. Four days later he was definitely diagnosed with mesothelioma. Four days after that he died. He was sixty-eight years old.
On appeal, Owens contends that: (1) the pain and suffering award is excessive because Thalman's terminal condition was never communicated to him; (2) Thalman's real pain and suffering was caused by his long-standing non-asbestos related condition; (3) the excessiveness of the pain and suffering award is demonstrated by its comparison to other awards; (4) the jury's wrongful death award is so excessive in relation to the evidence that a new trial is required, and (5) the loss of consortium award is excessive. On cross-appeal, plaintiff contends that the remittitur of the loss of consortium award was based on speculation and was an improper *682 substitution of the court's judgment for that of the jury, and the remittitur of the wrongful death award was improper.
In challenging the pain and suffering award, Owens argues that Thalman's terminal condition was never communicated to him. The record does not reflect that Thalman was ever advised of the mesothelioma diagnosis. On the other hand, the record amply supports the conclusion that Thalman was aware that death was near. More importantly, it is uncontroverted that the decortication surgery, which required that the ribs be "split open, pulled apart" in order to access the lungs, caused excruciating pain. This pain continued for months after the surgery. In addition, Thalman experienced nausea, weight loss and depression. Plaintiff testified that towards the end, "[h]e said he was in such pain, if he had a gun, he'd take it to his head." In light of these proofs we find Owens' argument wholly unpersuasive.
The next challenge to the pain and suffering award is that Thalman's suffering was caused by other non-asbestos related conditions. Although there was substantial evidence that Thalman suffered from heart disease, emphysema and arteriosclerosis, the jury could readily find that it was the mesothelioma which caused the episodes of excruciating pain, depression, deterioration of physical faculties, dependence on others, and loss of the enjoyment of life. A $1,500,000 jury award for that pain and suffering cannot be regarded as a miscarriage of justice. See Baxter v. Fairmont Food Co., 74 N.J. 588, 596, 379 A.2d 225 (1977). The trial judge correctly refused to disturb that aspect of the jury award.
Owens' argument based on comparison to other awards for the same injury does not persuade. In actions to recover damages for personal injuries, there are "no fixed standards by which to gauge damages[.]" Cabakov v. Thatcher, 37 N.J. Super. 249, 257, 117 A.2d 298 (App.Div. 1955). Because "[n]o case of personal injuries is ever an exact and binding precedent for another upon the question of excessiveness of a verdict even where there is a close parallelism of facts and circumstances bearing upon the amount of damages," it is the rare case that "lends itself to a *683 comparison with others in determining whether ... the verdict is excessive." Moore v. Public Service Coordinated Transport, 15 N.J. Super. 499, 512, 83 A.2d 725 (App.Div. 1951).
Owens' next argument is that the jury's wrongful death award is excessive and requires a new trial. Plaintiff contends that the judge should not have remitted the jury's award. We agree with the plaintiff. N.J.S.A. 2A:31-5 provides that only pecuniary losses may be recovered for wrongful death by the intestate beneficiaries of the decedent. Dependent intestate beneficiaries take to the exclusion on non-dependent beneficiaries. N.J.S.A. 2A:31-4. The loss is measured by the beneficiaries' reasonable expectation of pecuniary advantage from the continuance of the life of the deceased. Graf v. Taggert, 43 N.J. 303, 307-08, 204 A.2d 140 (1964). Included in the pecuniary loss is not only the net earnings, but the loss of services having a pecuniary value which the decedent, had he or she lived, might have rendered. Id. at 308, 204 A.2d 140. The judge here failed to articulate a reason for setting aside the wrongful death award. He stated that "a more reasonable number would be $150,000." He offered no "feel of the case" analysis in support of that conclusion. Baxter, 74 N.J. at 601, 379 A.2d 225. A trial court and this court must give the jury award "very considerable respect." Id. at 597, 379 A.2d 225. Judges must "resist the natural temptation to substitute their judgment for that of the jury" and may not overthrow an award "except upon the basis of a carefully reasoned and factually supported (and articulated) determination, after canvassing the record and weighing the evidence, that the continued viability of the judgment would constitute a manifest denial of justice." Id. at 597-98, 379 A.2d 225.
Thalman's life expectancy was fourteen years. Although he had retired, he performed handyman maintenance around the house and baby sitting for his grandchildren. His lost pension income totalled $84,000. Our canvass of the record fails to disclose any tangible support for the contention that the award was tainted by passion, pity or sympathy. Nor can we say that the *684 $300,000 was so disproportionate to the plaintiff's pecuniary loss as to shock our consciences or convince us that to sustain the award would be manifestly unjust. Id. at 596, 379 A.2d 225.
On cross-appeal, plaintiff contends that the judge erred in granting a remittitur of the loss of consortium award. We agree. Owens argues, and the judge apparently accepted, that the jury awarded $1,000 for each month of Thalman's life expectancy, 168 months. However, other than the numerical coincidence, there is no reason to speculate that the jury disregarded the instruction to limit a consortium award to the period of Thalman's actual life. The jury should have calculated the consortium award for the period beginning with the onset of the injury caused by Owens' product and ending with Thalman's death. The question is whether the jury's assessment of those losses at $168,000 is "so disproportionate to the injury and resulting disability shown as to shock [the court's] conscience and to convince [the court] that to sustain the award would be manifestly unjust." Baxter, 74 N.J. at 596, 379 A.2d 225.
It is well settled that a wife is entitled to "fair and reasonable compensation for any loss or impairment of her husband's services, society or consortium because of injuries sustained by him as a proximate result of defendant's wrongdoing." Zalewski v. Gallagher, 150 N.J. Super. 360, 372, 375 A.2d 1195 (App.Div. 1977). The cause of action focuses on the consortium or relationship. The severity of the loss is dependent on the quality of the pre-injury relationship. Dunphy v. Gregor, 136 N.J. 99, 111, 642 A.2d 372 (1994). Impairment of the consortium includes not only the loss of the injured spouse's services but also its reciprocal burdening of the other spouse. In Ekalo v. Constructive Serv. Corp. of America, 46 N.J. 82, 93, 215 A.2d 1 (1965), Justice Jacobs cited with approval this description of a consortium loss:
When a man is injured by another's wrong, separate injuries occur to him and his wife. The husband is often, because of an injury, reduced to a physical and psychological skeleton; the wife, because of the same injury, is deprived of the affection, society and comfort that only her husband can give. While the husband *685 suffers physical pain, the loss to the wife is often more significant. If damages are to be awarded to the wife, they are to compensate her for her loss. This loss of the wife should outweigh any concern for the additional imposition of liability upon the wrongdoer.
Id. at 93-94, 215 A.2d 1 (quoting Joseph J. Simeone, The Wife's Action for Loss of Consortium  Progress or No?, 4 St. Louis U.L.J. 424, 438 (1957)). Ekalo suggests that a wife may be compensated for having been transformed by a tortfeasor's negligence "from a loving wife into a lonely nurse," id. at 84, 215 A.2d 1.
Plaintiff and her husband were married for forty-four years and had six adult children, as well as grandchildren. For the eleven months following the decortication surgery, Thalman reduced and then ceased the activities he ordinarily enjoyed with his wife, including daily contact with his grandchildren, going out for family outings, and socializing with her and others. Thalman became withdrawn from his grandchildren as the disease progressed. Certainly, this impairment of the value of Thalman's society is a compensable loss to plaintiff.
Thalman continued to weaken physically. In time he could no longer shave or bathe himself. Plaintiff provided the necessary assistance to her husband as those disabilities worsened. That plaintiff was called upon to provide those services necessarily affected the relationship between herself and her husband. Certainly, that too is a loss which is compensable to plaintiff.
There can be no doubt that Thalman's attendance to his household duties, his companionship and comfort to his wife, his services and marital relationship were all profoundly impaired during and as a result of his illness.
Accordingly, we modify the judgment to reinstate the jury awards for plaintiff's loss of consortium and wrongful death award. As modified, the judgment is affirmed. The matter is remanded for the entry of an amended molded judgment against Owens for $285,000 for Thalman's pain and suffering, $31,920 for plaintiff's loss of consortium and $57,000 for wrongful death.